**Quentin T. MIMS, Plaintiff,**

v.

**CARRIER CORPORATION, et al., Defendants.**

**No. 6:98CV492.**

United States District Court,
E.D. Texas,
Tyler Division.

March 24, 2000.

Linda Ann Altier, Altier Law Offices, Tyler, TX, Sten Marti Langsjoen, Attorney at Law, Tyler, TX, for plaintiff.

Stephen Cass Weiland, Sheinfeld Maley & Kay, Dallas, TX, for defendants.

## ORDER ON SUMMARY JUDGMENT

STEGER, District Judge.

Came on this day to be considered *Defendants' Motion for Summary Judgment* and *Supporting Brief* (Docket No. 39) and *Counter–Plaintiff Bob Chauvin's Motion for Summary Judgment and Supporting Brief* (Docket No. 41). After careful consideration, the Court is of the opinion that the following order should issue.

The plaintiff employee alleges hostile work environment sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 as well as intentional infliction of emotional distress under Texas law against the defendant company. The defendant has moved for summary judgment on all claims. Bob Chauvin, an individual defendant, has also moved for summary judgment on his counterclaims of malicious prosecution and abuse of process.

### FACTS AND PROCEDURAL HISTORY

The plaintiff, Quentin T. Mims ("Mims"), is a resident of Tyler, Texas, and is employed by the defendant company. First Amended Original Complaint [sic] ("Complaint") (Docket No. 50) at ¶ 9. The defendant, Carrier Air Conditioning ("Carrier"), is a Delaware corporation doing business under the laws of the State of Texas and domiciled in Tyler, Texas. *Complaint* at ¶ 10.

Mims began working for Carrier on June 5, 1984, and worked in its Tyler facility. *Complaint* at ¶ 14, *Mims Deposition* at p. 9. He was eventually assigned to work in the Press Shop, location 853, where he remains to this day as a press operator. *Complaint* at ¶ 15, *Mims Deposition* at p. 14.

Carrier employees, including Mims, are governed by a collective bargaining agreement ("CBA") for purposes of compensation and terms of employment. *Affidavit of Jim Damron ("Damron Affidavit")*, attached as Exhibit 2 to the *Defendant's Motion for Summary Judgment ("Motion")*, at ¶ 4; *Mims Deposition* at p. 14. The defendants aver that no supervisor has authority to alter an hourly employee's terms or conditions of employment, and movement among job classifications is gov-

erned by seniority. *Damron Affidavit* at ¶ 4; *Mims Deposition* at p. 15. Since 1992, the plaintiff has received wages at Labor Grade 6 and has received incentive pay, holiday pay, and benefits pursuant to the CBA. *Damron Affidavit* at ¶ 4.

In May 1996, Linda Lowden ("Lowden") reported Mims for what she believed to be sexual harassment based on inappropriate comments and touching. *Affidavit of Linda Lowden ("Lowden Affidavit")*, attached as Exhibit 3 to the *Motion*, at ¶ 3. Following an investigation by Damron and Lowden's supervisor, Defendant Carlos Wilson, Mims was suspended for one week from June 3–10, 1996. *Damron Affidavit* at ¶ 5; *Affidavit of Carlos Wilson ("Wilson Affidavit")*, attached as Exhibit 4 to the *Motion*, at ¶ 3.

The plaintiff now contends that, while working in the press shop, the individual defendants, Wilson and Wayne Harrison, began to make offensive and unwelcome sexual comments and gestures toward the plaintiff. *Complaint* at ¶ 15. Specifically, Mims alleges that these individual defendants suggested that he was engaging in homosexual conduct with male co-worker Kelly Ray. *Complaint* at ¶ 15. These remarks were purportedly made in the presence of Mims and several of his co-workers, at times accompanied by graphic and offensive body gestures. *Complaint* at ¶ 15; *Mims Deposition* at p. 55–56, 62–65, 71–74, 81–82, 87–89; *Affidavit of Quentin Mims ("Mims Affidavit")*, attached as Exhibit A to the plaintiff's *Response to Motions for Summary Judgment* (Docket No. 46), at p. 1. The defendants assert that any teasing was initiated by jokes made by Mims. *Mims Deposition* at p. 56. The remarks allegedly caused Mims to seek medical care. *Complaint* at ¶ 15. Mims testified that the offensive comments started approximately in early 1996. *Mims Deposition* at p. 63–64.

The plaintiff reported this offensive behavior to his supervisors, including Defendant Bob Chauvin, as he believed it to be violative of company policy. *Complaint* at ¶ 16–18; *Mims Affidavit* at p. 2. The plain-tiff further contends that, despite his complaints, the harassing, offensive conduct continued unabated. *Complaint* at ¶ 18. Mims believes that his supervisors intentionally allowed the offensive conduct and refused to stop it. *Complaint* at ¶ 18.

The plaintiff also alleges that, due to his complaint of harassment, Defendant Bob Chauvin began to retaliate against him by "generating and participating in unreasonable reprimands" of him. *Complaint* at ¶ 19. This retaliation included Chauvin's physical removal of Mims in December 1997 from a Carrier work facility in an "unwelcome, injurious and humiliating manner" by forcefully grabbing his wrist and elbow, bruising him. *Complaint* at ¶ 19; *Mims Affidavit* at p. 3. Though Mims claims he was simply talking with friends, Chauvin avers that the area supervisor asked him to remove Mims, as he was "distracting [the other employees] from their work." *Affidavit of Robert Chauvin ("Chauvin Affidavit II")*, attached as Exhibit 2 to *Counter Plaintiff Bob Chauvin's Motion for Summary Judgment and Supporting Brief ("Counter Plaintiff's Motion")*, at ¶ 3. Chauvin also states that he merely escorted Mims out of the building, and did not assault him in any way. *Chauvin Affidavit II* at ¶ 4–5.

The plaintiff also contends that this retaliation resulted in the following: the denial to the plaintiff of light-duty work by Defendant Chauvin in February 1998; the unreasonable suspension of the plaintiff without pay on one occasion; and the defendant's refusal to the plaintiff of work in the Tyler facility from February 1998 to June 1999. *Complaint* at ¶ at 19–20; *Mims Affidavit* at p. 3. Mims made a charge of discrimination to the Equal Employment Opportunity Commission (EEOC) in May of 1998. *Complaint* at 17; *Mims Affidavit* at p. 3.

Mims later filed a complaint concerning the December 1997 incident involving Chauvin with Mark Dunlap, then the Human Resources Manager at the plant, on January 15, 1998. *Affidavit of Mark Dun-*

lap ("*Dunlap Affidavit*"), attached as Exhibit 4 to *Counter Plaintiff's Motion*, at ¶ 3. Mims also went to the Tyler Police Department and filed a criminal complaint against Chauvin for criminal assault. *Mims Deposition* at pp. 137–38. Chauvin now complains that he was slandered by the criminal charge, and that it damaged his reputation among his co-workers. *Chauvin Deposition* at pp. 66–67. He further states that he left Carrier's Tyler plant because of the damage the incident caused to his career. *Chauvin Deposition* at p. 8.

On August 5, 1998, the plaintiff filed the instant cause of action, seeking damages, costs, and attorney's fees for his claims, including hostile work environment, discrimination, and emotional distress. *Original Complaint* (Docket No. 1).

On July 9, 1999, Mims' attorney, Linda Altier, sought leave to withdraw as counsel (Docket No. 27). The Court granted her request on July 20, 1999 (Docket No. 30). On September 13, 1999, Sten M. Langsjoen entered his notice of appearance as Mims's attorney (Docket No. 37).

On September 23, 1999, Carrier filed their motion for summary judgment as to all of the plaintiff's claims. On October 14, 1999, Defendant Bob Chauvin moved for summary judgment on his counterclaim. Both motions are now ripe for consideration.

### STANDARD OF REVIEW

Carrier Air Conditioning, the defendant in this case, has moved for summary judgment. A party is entitled to summary judgment on all or any part of a claim "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party must show initially that there is no genuine issue of any material fact. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The movant may meet this burden by pointing out the absence of evidence supporting any essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In deciding whether to grant a motion for summary judgment, the Court "review[s] the evidence and inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir.1991) (citing *Duvall v. The Ritz Carlton Hotel Co.*, 946 F.2d 418, 420 (5th Cir.1991), and quoting FED.R.CIV.P. 56(c)). An issue is "genuine" only if the evidence could lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513).

The opposing party may not rest on the mere allegations or denials of artful pleading, but must set forth affirmative facts that show a genuine issue for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. This requires that the non-moving party make a showing sufficient to establish the existence of any element essential to that party's case, and on which that party will bear the burden at trial. *Nowlin v. R.T.C.*, 33 F.3d 498, 501 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–553).

For the reasons set out below, the Court finds that there is no genuine issue as to any material fact and summary judgment is therefore proper in this case.

### ANALYSIS

In relation to the defendant's motion for summary judgment, the Court will analyze the following claims of the plaintiff as well as the defendant's counterclaim:

(A) Whether the defendants' actions give rise to a claim for hostile work environment sexual harassment under Title VII;

(B) Whether the defendants' actions were in retaliation against the plaintiff in violation of Title VII;

(C) Whether the defendants' actions constituted intentional infliction of emotional distress under Texas law; and

(D) Whether the plaintiff is liable to individual defendant / counter-plaintiff Bob Chauvin for malicious prosecution and / or abuse of process under Texas law.

The Court will discuss each of these issues individually in the order listed above.

**(A) Whether the defendants' actions give rise to a claim for hostile work environment sexual harassment under Title VII.**

■ The plaintiff alleges in his amended complaint that Carrier discriminated against him based on his sex as proscribed by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a).[1] That section provides that discrimination against an individual regarding conditions or privileges of employment because of the individual's sex is an unlawful employment practice. The plaintiff's complaint does not support such an allegation, and the Court finds that summary judgment on this claim should be granted.

Title VII proscribes an employer discriminating against a member of a protected class, providing that: "It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e–

2(a)(1). The plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir.1993). Establishment of a prima facie case raises a presumption of discrimination, which the defendant may rebut by articulating a legitimate, nondiscriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981); *Bodenheimer,* 5 F.3d at 957.[2] If the defendant is able to surmount this presumption of discrimination with a legitimate reason, the burden returns to the plaintiff, who must then show that the proffered reasons were merely a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Bodenheimer,* 5 F.3d at 957. The plaintiff retains the ultimate burden of persuasion throughout the whole case. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

The plaintiff's claim is not a typical Title VII case. Mims claims that he was subjected to a hostile work environment based on perceived sexual orientation. That is to say, Mims contends that, though he is not homosexual, he was harassed and treated as a homosexual. For the reasons stated by the defendant, the Court finds that this claim lacks merit. The Court will first discuss the elements of the claim and will then apply the facts of the instant case.

■ The defendant is entitled to judgment as a matter of law as to this claim.

---

1. Defendant Carrier correctly points out that the remaining individual defendants, Chauvin, Harrison, and Wilson, cannot be liable on the Title VII claims of hostile work environment sexual harassment and retaliation, because individual supervisors are not "employers" under the Act. *Grant v. Lone Star Co.,* 21 F.3d 649, 650–51 (5th Cir.1994). However, the plaintiff seeks damages from these defendants for the intentional infliction of emotional distress claim, discussed *infra.*

2. "A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting." [citations omitted] *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978).

Mims is unable to establish a prima facie case of sexual harassment. A plaintiff seeking to establish a cause of action for hostile work environment sexual harassment must show that the conduct was either severe or pervasive. *Burlington Industries v. Ellerth,* 524 U.S. 742, 751, 118 S.Ct. 2257, 2264, 141 L.Ed.2d 633 (1998). "In order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)).[3]

■ A court may look to all relevant circumstances when determining whether a work environment meets this standard, including the following:

(1) The frequency of the discriminatory conduct;

(2) The severity of the discriminatory conduct;

(3) Whether the discriminatory conduct is physically threatening or humiliating or a mere offensive utterance; and

(4) Whether the discriminatory conduct unreasonably interferes with an employee's work performance.

■ To establish a claim for hostile work environment sexual harassment, the plaintiff must be able to show the following:

(1) That he belongs to a protected class;

(2) That he was subjected to unwelcome sexual harassment;

(3) That the harassment was based on sex;

(4) That the harassment was sufficiently severe to alter the terms and conditions of his employment; and

(5) That Carrier either knew or should have known of the harassment and failed to take prompt remedial action.

*Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

The Court will address these elements of a prima facie case individually in the order listed above.

### (1) Whether Mims belongs to a protected class.

The first element of a prima facie case of hostile work environment is that the plaintiff must be a member of a protected class. The instant plaintiff complains that a joke about himself and another male co-worker, Kelly Ray, evolved into incessant teasing to the effect that he was homosexual and Ray was his lover. However, Carrier asserts that this claim is not actionable, as Fifth Circuit law does not allow a claim for discrimination based on sexual preference. *See Smith v. Liberty Mutual Ins. Co.,* 569 F.2d 325 (5th Cir.1978).

In *Smith,* the appellate court rejected a male applicant claim that the defendant company did not hire him, not because of his gender, but because he was perceived to be effeminate. The Court refused to extend Title VII protection to a potential plaintiff based on affectional or sexual preference. 569 F.2d at 326. Other courts in recent years have similarly declined to allow such claims. *See also Sarff v. Continental Express,* 894 F.Supp. 1076, 1081 (S.D.Tex.1995) (Finding that male employee who alleged that he was terminated as result of his complaints to employer about actions of male co-worker who presumed that employee was gay and proceeded to act on a stereotype to humili-

---

**3.** Compare racially-motivated "hostile work environment" cases, in which a plaintiff must show more than that he was treated badly and he is black. *McCray v. DPC Industries, Inc.,* 942 F.Supp. 288, 292 (E.D.Tex.1996)

(Hannah, J.) (citing *Jennings v. Uniroyal Plastics Inc.,* 1989 WL 125601 (N.D.Ind.1989)). Similarly, here, Mims must show more than that he was treated badly and is homosexual or perceived as a homosexual.

ate employee by leaving earrings and make-up brush in his coffee mug did not establish retaliatory discharge claim under Title VII), *aff'd,* 85 F.3d 624 (5th Cir.1996); *Ulane v. Eastern Airlines,* 742 F.2d 1081, 1084 (7th Cir.1984) (Finding that Title VII does not protect transsexuals, and, even if transsexual was considered female, trial judge made no factual findings necessary to support conclusion that employer discriminated against her on this basis), *cert. denied,* 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985); *Vandeventer v. Wabash Nat. Corp.,* 887 F.Supp. 1178, 1180 (N.D.Ind.1995).

■ The Court agrees with the defendant that the instant case does not give rise to an actionable Title VII discrimination claim and should therefore be dismissed. Neither sexual orientation nor perceived sexual orientation constitute protected classes under the Civil Rights Act. Therefore, lacking membership in a protected class, the plaintiff's claim must fail as a matter of law. However, the Court will analyze all remaining elements of the claim.

### (2) Whether Mims was subjected to unwelcome sexual harassment.

Assuming membership in a protected class, Mims must also show that he was subjected to unwelcome harassment. The defendant argues that Mims should not be able to complain about the alleged teasing, as he possibly instigated, and certainly participated in, the joking about his relationship with Ray. *Mims Deposition* at 55–56, 62. However, the Court does not necessarily agree that his participation in the joking renders the alleged harassment welcome. Assuming that the behavior here constituted harassment, it obviously became unwelcome at some point. The Court hesitates to say that a plaintiff's compliance with, or acquiescence to, teasing co-workers bars a later claim. For

example, a black plaintiff—certainly a member of a protected class—should not be similarly barred by his acquiescence to racial epithets.

### (3) Whether the harassment was based on Mim's sex.

■ The defendants vigorously dispute that the alleged harassment was based on sex. The Court agrees, finding that the alleged harassment was not based on sex. There is no arguable legal basis for contending that perceived sexual preference merits protection merely because it concerns sex. The clear meaning of "sex" under Title VII is not "intercourse," but "gender," and Mims does not allege that he was discriminated against because of his gender.[4]

The defendant persuasively cites the Supreme Court's decision in *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), for the parameters of a same-sex sexual harassment claim, or a claim that the plaintiff was harassed by members of the same sex. In that case, the Court wrote that a plaintiff may prove same-sex harassment by the following:

(1) **Sexual desire.** The plaintiff may show same-sex harassment if there is credible evidence that the harasser was a homosexual and exhibited sexual desire toward the plaintiff;

(2) **General hostility.** Same-sex harassment may occur if the harasser treats another member of the same gender in such sex-specific and derogatory terms that it is apparent that a general hostility toward the presence of members of the gender in the workplace is motivating the harasser; and

(3) **Comparative evidence.** Same-sex harassment may be established by

---

**4.** The Supreme Court wrote in *Oncale* that "workplace harassment, even harassment between men and women, is [not] automatically discrimination because of sex merely because the words used have sexual content or conno-

tations. The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." 118 S.Ct. at 998.

comparative evidence showing how the alleged harasser treated members of both genders in the workplace.

118 S.Ct. at 1002. (Ginsburg, J., concurring)

Mims' deposition testimony fails to establish same-sex harassment by any of these methods. Mims testified that his harassers were not, to his knowledge, homosexual and had never expressed any sexual interest in him. *Mims Deposition* at 72–73, 103–104. He likewise stated that the defendant company does not, as a general rule, discriminate against men, and that there is not a general hostility toward men at Carrier. *Mims Deposition* at 154. He was also unable to state that any of the individual defendants discriminate against *all* men. Finally, the plaintiff testified that the individual defendants treated both men and women equally in that they made homosexual jokes in front of mixed company or specifically to women. *Mims Deposition* at 64–65, 71, 92.

Therefore, the plaintiff is completely unable to establish that the alleged harassment was based on gender, a protected disability. Failing this one element of a hostile work environment claim, the defendant is entitled to judgment as a matter of law.

### (4) Whether the harassment was sufficiently severe to alter the terms and conditions of Mims' employment.

To establish a hostile work environment sexual harassment claim, the plaintiff must also show that the alleged harassment was sufficiently severe enough to alter the terms and conditions of his employment. The parties vigorously dispute this issue. The Court finds that there is no genuine issue of material fact as to this element, as there is no evidence to show that the harassment was severe enough to alter a term or condition of employment.

As a preliminary matter, the Court notes that not all workplace "harassment" affects a term, condition, or privilege of employment within the purview of Title VII as developed by case law. *Meritor Savs. Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). A plaintiff must prove that the harassment was so severe and pervasive that it altered the conditions of employment and constituted an abusive working environment. *Id.,* 477 U.S. at 67, 106 S.Ct. at 2405–06. In the context of racial discrimination, this requires proof, not of a "few isolated incidents of racial enmity," [5] but rather a "steady barrage of opprobrious racial comments." [6]

The Court further acknowledges that offensive comments, such as a racial epithet, do not significantly affect the conditions of employment so as to give rise to a Title VII race discrimination claim. *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). Neither do sporadic racial comments during casual conversation establish the necessary elements for a prima facie case. *Hicks,* 833 F.2d at 1412. Similarly, here, even assuming protected status for homosexuals, sporadic derogatory comments could not suffice to give rise to an actionable Title VII claim, but the harassment would have to "be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Farpella–Crosby v. Horizon Health Care,* 97 F.3d 803, 806 (5th Cir.1996).

A recent Eastern District case clearly defines the parameters of a claim for hostile work environment. In *McCray v. DPC Industries, Inc.,* Judge John Hannah held that the defendants were entitled to summary judgment on the plaintiff's claim, despite the following allegations by the plaintiff:

---

**5.** *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1412 (10th Cir.1987).

**6.** *Bolden v. PRC, Inc.,* 43 F.3d 545, 551 (10th Cir.1994), *cert. denied,* 516 U.S. 826, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995).

(1) That Pierce, the defendant supervisor, called him "black yankee" and "son";

(2) That Pierce made insulting jokes about three black political leaders;

(3) That Pierce and another truck driver each told a racial joke;

(4) That another truck driver called McCray a "nigger"; and

(5) That he and Pierce had a physical altercation.[7]

The Court wrote that "these actions, while not commendable, are not so numerous and opprobrious as to constitute a hostile work environment." *Id.* at 293. Judge Hannah held that the racist comments were made sporadically, during casual conversation, and could not therefore be violative of Title VII. *Id.* Furthermore, the physical altercation was not predicated on racial animus, and could not be used as support for such a claim. *Id.* The Court also cited persuasive authority suggesting that "personality conflicts between employees are not the business of the federal courts." *Id.*

More specifically, as to allegations of sexual harassment, the defendants cite further authority establishing the high standard—or low one, rather—that employers and fellow employees must "stoop to" in order to give rise to a hostile work environment claim. *See Shepherd v. Comptroller of Public Accounts of the State of Texas,* 168 F.3d 871, 872–74 (5th Cir.) (Holding that male co-worker's sexual harassment of female employee, which included incidents of unwanted touching on employee's arm, attempting to look down employee's clothing and making offensive remarks, did not render employee's work environment objectively hostile or abusive, as was necessary to support hostile work environment sexual harassment claim under Title VII, though incidents occurred intermittently for over a year), *cert. denied,* —— U.S. ——, 120 S.Ct. 395, 145 L.Ed.2d 308 (1999); *Gearhart v. Eye Care Centers of America,* 888 F.Supp. 814, 824–25 (S.D.Tex.1995) (Finding that former

employee failed to establish that comments made by supervisor amounted to intentional infliction of emotional distress, and failed to establish hostile work environment sexual harassment claim); *Valdez v. Church's Fried Chicken, Inc.,* 683 F.Supp. 596, 620 (W.D.Tex.1988).

■ The plaintiff's deposition testimony reveals off-color teasing and joking. However, the testimony does not support a claim of harassment which was pervasive, severe or abusive. *Farpella–Crosby,* 97 F.3d at 806. Mims testified as follows concerning the teasing about his relationship with Kelly Ray:

[J]okes [were made] saying that we were in bed together or we—he'd tell Kelly Ray, like if I didn't come in to work, how come you didn't roll over and wake your old lady up. But he took this and told it up in the upstairs conference rooms, not in our presence. You'd have these people coming down and teasing you. You'd have people coming down on the shop floor teasing you.

*Mims Deposition* at p. 63. He also stated that Defendant Wilson made jokes that Ray had put a "hickey" on his neck. *Mims Deposition* at p. 64–65. Mims further said that the individual defendants would make obscene comments concerning him and Ray. *Mims Deposition* at pp. 82, 89. The plaintiff did admit that he participated in the joking, "but it was because somebody else started it, trying to let it kind of pass over, kind of like go along with it and let it get over with." *Mims Deposition* at p. 56.

The teasing was in bad taste. However, Title VII is not a guardian of taste. The teasing may also have been offensive to Mims. But the teasing could not reasonably be perceived as *severely* offensive or abusive, especially considering that the plaintiff himself participated in the "joke." No one touched him in any way, or propositioned him for sex. *Mims Deposition* at p. 82. There is no testimony or evidence

---

7. *McCray,* 942 F.Supp. at 290–293.

showing that the alleged harassment was anything more than isolated incidents of simple teasing and offhand comments. *Faragher v. City of Boca Raton*, 524 U.S. at 787, 118 S.Ct. at 2283.

Despite his protestations to the contrary, the plaintiff has not provided any summary judgment evidence demonstrating that a term, condition, or privilege of his employment was affected as a result of the alleged harassment. Failing this one element, the plaintiff is unable to show a prima facie case for a claim of hostile work environment sexual harassment.

**(5) Whether Carrier either knew or should have known of the harassment and failed to take prompt remedial action.**

Despite the fact that the Court has found that the plaintiff cannot establish any element of a *prima facie* case of discrimination, it will discuss the final element of a Title VII claim. To establish a hostile work environment sexual harassment claim, the plaintiff must finally show that Defendant Carrier either knew or should have known of the harassment and failed to take prompt remedial action—essentially, *respondeat superior*.

▮ Agency principles apply to Title VII when intentional wrongs are committed in furtherance of employment; however, the tortfeasing employee must think that he is doing the employer's business when committing the wrong. *Patterson v. PHP Healthcare*, 90 F.3d 927, 943 (5th Cir.), *cert. denied*, 519 U.S. 1091, 117 S.Ct. 767, 136 L.Ed.2d 713 (1997), *overruled on other grounds*. An employer may also be vicariously liable for harassment where it failed to exercise reasonable care to prevent the harassment. *Faragher*, 524 U.S. at 799, 118 S.Ct. at 2289.

▮ One recent Supreme Court case developed the theory of employer liability for employee actions in the context of Title VII. In *Burlington Industries*, the Court distinguished between cases in which "a

supervisor takes a tangible employment action against the subordinate" [8] and cases in which "the agency relation aids in commission of supervisor harassment which does not culminate in a tangible employment action." [9] "Tangible employment actions" are actions by which a supervisor brings the official power of the entity to bear on subordinates. 524 U.S. at 761, 118 S.Ct. at 2269. Such actions become the actions of the employer, and the employer is necessarily liable. *Id.* The Court also noted that such action constitutes a "significant change in employment status," including hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a change in benefits. 524 U.S. at 760, 118 S.Ct. at 2268. It usually inflicts direct economic harm. 524 U.S. at 761, 118 S.Ct. at 2269. This definition is remarkably similar to the language defining a term or condition of employment or that concerning an "adverse employment decision."

▮ The other class of cases discussed in *Burlington* were those in which no tangible employment action is taken against an employee. In these cases, an employer may be vicariously liable "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." 524 U.S. at 762, 118 S.Ct. at 2270. However, the Court stressed that a finding of a "hostile environment" required severe, pervasive behavior that was both objectively and subjectively offensive. 524 U.S. at 765, 118 S.Ct. at 2273. (citing *Harris*, 510 U.S. at 21–22, 114 S.Ct. at 370).

The Court has already found that a number of elements are lacking for the establishment of a prima facie case for hostile work environment sexual harassment. However, assuming *arguendo* that the other elements were met, the Court might find *respondeat superior*. Carrier could be vicariously liable for the alleged harassment if it failed to exercise reason-

---

**8.** 524 U.S. at 760, 118 S.Ct. at 2268.

**9.** 524 U.S. at 761, 118 S.Ct. at 2269.

able care to prevent the harassment. *Faragher*, 524 U.S. at 799, 118 S.Ct. at 2289. Mims reported the individual defendants' unwelcome behavior to his supervisors and Carrier management. *Mims Deposition* at p. 88, 104. There is no testimony or evidence that the individual defendants were instructed to stop teasing Mims or were reprimanded in any way. *Mims Deposition* at p. 127, 164.

Therefore, assuming the plaintiff had established the other elements for a claim of hostile work environment sexual harassment, the Court might find that this element was met as well. Carrier management was aware of the behavior, and, had Mims been truly harassed, Carrier could have failed to exercise reasonable care to prevent the harassment.

### (6) Conclusion as to Discrimination Claim.

Mims is unable to establish a prima facie case for hostile work environment sexual harassment. Even when viewing the evidence in the light most favorable to the plaintiff, there are no genuine questions of material fact on this claim for resolution by a jury. Most importantly, the plaintiff is not a member of a protected class. Further, the alleged harassment did not affect a term or condition of his employment. Therefore, as Mims has completely failed to show that he was subjected to a hostile work environment causally connected to his alleged protected status, the Court will grant Carrier's motion for summary judgment on this Title VII claim.

### (B) Whether the defendants' actions were in retaliation against the plaintiff in violation of Title VII.

■ The plaintiff also claims that Carrier retaliated against her in violation of Title VII.[10] To make a prima facie case of retaliation, the plaintiff must show the following:

(1) That she participated in a statutorily protected activity;

(2) That she received an adverse employment action; and

(3) That a causal connection exists between the protected activity and the adverse action.

*Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir.1995); *Armstrong v. City of Dallas*, 997 F.2d 62, 65 n. 3 (5th Cir.1993) (citing *De Anda v. St. Joseph Hosp.*, 671 F.2d 850 (5th Cir.1982)). The defendant does not contest that Mims participated in a statutorily protected activity, namely, that he complained about what he believed to be "sexual harassment" and filed an EEOC charge of discrimination. However, the defendant vociferously objects that the plaintiff has failed to show that he suffered an adverse action that was causally connected to the protected activity.

### (1) Whether Mims suffered an adverse employment decision.

The plaintiff's failure to raise a fact question as to whether he suffered an adverse employment decision is dispositive as to the plaintiff's claim. *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 n. 1 (5th Cir.1997). Therefore, the Court will now turn its attention to whether or not the plaintiff suffered an adverse employment decision.

A plaintiff must prove that he is a member of a protected class and that he suffered an adverse employment decision. *Meinecke v. H & R Block*, 66 F.3d 77, 83 (5th Cir.1995). The plaintiff must also show that he was treated differently from similarly situated individuals and that there was a causal connection between his protected status and the adverse employment decision. *Furnco*, 438 U.S. at 577, 98 S.Ct. at 2950.

In *Furnco*, the plaintiffs were not fired, but instead were not hired. Here, the plaintiff claims that he was reprimanded

---

**10.** *See* note 1, *supra*. The individual defendants—Chauvin, Wilson, and Harrison—can-

not be liable under the retaliation claim.

and moved between different jobs within his labor grade. However, the *Furnco* Court noted that "[t]he facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *Id.,* 438 U.S. at 576, 98 S.Ct. at 2949 (citing *McDonnell,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824). The Court instead turned the discussion to whether or not it was more likely than not that such actions were "based on a discriminatory criterion illegal under the Act." *Id.* (citing *Teamsters v. U.S.,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)).

 The Court notes that only "ultimate employment decisions" can constitute adverse employment actions for the purposes of establishing a prima facie case under Title VII. *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.1997). Ultimate employment decisions include acts such as hiring, promoting, compensating, and firing. *Dollis v. Rubin,* 77 F.3d 777, 782 (5th Cir.1995) (citing *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981)). The Fifth Circuit has held that "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect on those ultimate decisions." *Id.* at 781–82. The Court has also consistently held that hostility from other employees, and the resulting anxiety, does not constitute an ultimate employment decision. *Mattern,* 104 F.3d at 707. *See also Landgraf v. USI Film Prods.,* 968 F.2d 427, 431 (5th Cir.1992), *affirmed,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In fact, one recent Fifth Circuit case, *Mattern v. Eastman Kodak Company,* held that the following actions *did not* constitute an adverse employment action:

(1) An alleged visit by supervisors to the employee's home;

(2) A verbal threat of termination;

(3) A reprimand for not being at an assigned station; and

(4) Placement of the plaintiff on "final warning."

*Id.* at 708. Clearly, not every negative experience on the job can give rise to a Title VII claim.

With this standard in mind, Carrier contends that the plaintiff cannot establish a prima facie case of retaliation because he did not suffer an adverse employment action and there is no evidence suggesting that he was treated differently from a similarly situated employee. *Motion* at p. 15. In support of its position, the defendant company contends that the plaintiff's complaints of reprimands and denial of light-duty work do not constitute adverse employment decisions The defendant also contends that such an adverse action would be impossible under the relevant collective bargaining agreement. *Motion* at p. 15; *Mims Deposition* at pp. 14–15; *Damron Affidavit* at ¶ 4. Damron further avers in his affidavit:

> Plaintiff's compensation, terms, conditions or privileges of employment are governed by a collective bargaining agreement ("CBA"). No supervisor has an [sic] authority to alter an hourly employee's compensation, terms, conditions or privileges of employment. Movement among job classifications in the plant is governed by seniority. Since 1992 when Mims has worked in the press shop, he has received wages at a labor grade 6 and has received incentive pay, holiday pay, and benefits pursuant to the CBA. In this period, Mims has not bid out of the press shop or the Labor Grade 6.

*Id.* at ¶ 4.

**(2) Whether there was a causal connection between statutorily-protected activity and any alleged adverse employment action.**

 Further, the plaintiff has failed to show a causal connection between the statutorily protected activity and the alleged adverse action. Mims has submitted no

evidence demonstrating that Chauvin knew of the EEOC formal charge of discrimination. In fact, Mims filed the EEOC claim (May 1998) long after most of the facts allegedly giving rise to this claim had transpired. There is no evidence, either, to show that Mims' complaints of harassment were connected to the denial of light-duty work or suspension without pay.

■ Even assuming that Mims had shown a prima facie case that Carrier's suspension of Mims (arguably an adverse employment decision) was in retaliation for his complaints, Defendant Carrier has articulated a legitimate, nondiscriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094–95. The defendant's summary judgment affidavits state that Lowden's charge of sexual harassment against Mims was thoroughly investigated and revealed that "Mims had made inappropriate remarks and touched Lowden in violation of Carrier's sexual harassment policy." *Damron Affidavit* at ¶ 5. The investigation resulted in the suspension from June 3 to June 10, 1996. *Id.* Since the defendant has surmounted any presumption of discrimination with a legitimate reason, the burden has returned to Mims to show that the proffered reasons were merely a pretext for discrimination. Mims has been unable to show that the suspension was pretextual or was due to anything other than the sexual harassment claim filed against him.

### (3) Summary of retaliation claim.

After a review of the summary judgment evidence, the Court agrees with the defendant that the plaintiff's suggestion of lost pay and lost privileges is without a factual basis. Consequently, his claim of discrimination cannot survive summary judgment, as he has not shown that he suffered an adverse employment decision. Mims is unable even to make a prima facie case of discrimination.

Even viewing the facts in the light most favorable to the plaintiff, neither close scrutiny or personal dislike by any of the individual defendants will suffice for a prima facie case. Mims has not been subject to an ultimate employment decision as defined by the case law—he still works at the same job for the same pay, and the Company consistently followed established policies in its treatment of him.

### (C) Whether the defendants' actions constituted intentional infliction of emotional distress under Texas law.

■ The plaintiff's final claim is that Defendant Carrier and the individual defendants should be liable for intentional infliction of emotional distress under Texas law. The Fifth Circuit has held that interoffice behavior can arise to the level of a tort of intentional infliction of emotional distress; however, the standard is rigorous and is rarely met. A claim for intentional infliction of emotional distress may only be established by proving that the alleged tortfeasor—here, the employer—acted in a manner that was extreme and outrageous. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (1993). This conduct must be so extreme as to exceed "all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 cmt.d (1965)). The Court also notes that the "outrageousness" of conduct is initially a question of law for the Court. *Motsenbocker v. Potts*, 863 S.W.2d 126, 133 (Tex.App.—Dallas 1993, no writ).

In *McConathy*, the Fifth Circuit affirmed the district court's summary judgment as to the plaintiff's intentional infliction of emotional distress claim. The Court wrote that the defendant's purported acts were not "atrocious" enough, despite the following allegations:

(1) McConathy's supervisor, Colin Quigley ("Quigley"), was not supportive of her during her recovery from repeated jaw surgery, and told her to "get well this time";

(2) Quigley pressured McConathy to return to work before she was fully recovered;

(3) Quigley forced her to travel on business before she had recovered from surgery;

(4) Quigley told McConathy's staff to cease communications with her concerning projects under her supervision;

(5) Quigley excluded McConathy from certain business meetings;

(6) Quigley transferred assignments away from McConathy;

(7) Quigley refused to acknowledge McConathy's presence when together; and

(8) McConathy was subsequently fired in a departmental reorganization.

Despite these facts, the Court wrote that the plaintiff had not sufficiently established an intentional infliction claim.

■■■ Similarly, even assuming Mims' allegations as true, he has not alleged facts establishing a claim for intentional infliction of emotional distress. Though he testified in his deposition that he was "bitter" and "angry," and the teasing got "old," the individual defendants comments do no "shock the conscience." *Mims Deposition* at pp. 88, 119; *See Gonzales v. Willis*, 995 S.W.2d 729, 736 (Tex.App.—San Antonio 1999, n.w.h.). The teasing, obscenities, and other unpleasantness endured by Mims—while unfortunate—do not rise to the required level for such extraordinary relief.

**(D) Whether the plaintiff is liable to individual defendant / counter-plaintiff Bob Chauvin for malicious prosecution and / or abuse of process under Texas law.**

Finally, the Court must consider the counterclaim of Defendant Bob Chauvin against Mims for malicious prosecution and abuse of process.

■■■ Chauvin claims that Mims should be liable for malicious prosecution under Texas law. The elements for a claim of malicious prosecution are as follows:

(1) Commencement of a criminal prosecution or civil proceeding against the plaintiff at the instigation of the defendant;

(2) Termination of the proceeding in favor of the plaintiff, as well as actual innocence of the plaintiff;

(3) Absence of probable cause for the proceeding;

(4) Malice on the part of the defendant; and

(5) Damage to the plaintiff.

*Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (1997). The existence of probable cause for a claim of malicious prosecution is determined as of the time that the charges are brought. *See generally Rios v. United States*, 364 U.S. 253, 261, 80 S.Ct. 1431, 1436, 4 L.Ed.2d 1688 (1960); *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir.1988). The Texas Supreme Court has held that there is always a presumption that the defendant acted reasonably and in good faith, and therefore had probable cause, unless the plaintiff produces evidence that the grounds, motives, and evidence upon which the defendant acted upon were not probable cause to *commence* proceedings. *Akin v. Dahl*, 661 S.W.2d 917, 920 (1983).

■■■ Mims states that he was startled by the alleged contact and considered it offensive. *Mims Affidavit* at p. 3. He further claims that the alleged contact resulted in a painful bruise. *Id.* The Court agrees with the plaintiff that there are genuine questions of material fact as to Chauvin's counterclaim. *Response* at p. 10. Specifically, fact questions remaining include whether there was probable cause for Mims' filing the complaint, whether Chauvin was actually innocent of the crime, and whether Mims' complaint was malicious. The Court does not find that Mims' testimony as to whether or not he thought that filing a complaint would damage Chauvin's career necessarily consti-

tutes malice. *See Mims Deposition* at pp. 143–45. Nor does the fact that Mims waited approximately one month before filing the complaint necessarily result in the loss of probable cause or the presence of malice. The fact that no charges were brought likewise does not render Chauvin actually innocent.

Therefore, because genuine questions of material fact still exist as to whether or not the plaintiff should be liable for malicious prosecution, the Court will deny the counter-plaintiff's claim. Also, based upon the above reasoning, the Court cannot grant summary judgment on the counter-plaintiff's claim of abuse of process. Fact questions exist, as the plaintiff would have been justified in filing the complaint if probable cause existed or if Chauvin is not actually innocent.

## CONCLUSION

After a thorough review of the pleadings, the briefs of the parties, and the excerpts from the plaintiff's deposition submitted as summary judgment evidence, the Court holds that summary judgment should be granted and this case should be dismissed with prejudice. The plaintiff's claims of hostile work environment sexual harassment, retaliation, and intentional infliction of emotional distress against the defendant company, are either factually or legally deficient. Even when viewing all of the evidence in the light most favorable to the plaintiff, the Court finds that there is no genuine issue as to any material fact and the defendant, Carrier Air Conditioning, is entitled to judgment as a matter of law as to all of the plaintiff's claims. The Court denies Defendant / Counter–Plaintiff Chauvin's motion for summary judgment on his counter-claims for malicious prosecution and abuse of process.

It is therefore

**ORDERED** that *Defendant Carrier Corporation's Motion for Summary Judgment and Supporting Brief* (Docket No. 39) is hereby and in all things **GRANTED.** It is further

**ORDERED** that this action be **DISMISSED WITH PREJUDICE** as to all the plaintiff's claims. It is further

**ORDERED** that *Counter Plaintiff Bob Chauvin's Motion for Summary Judgment and Supporting Brief* (Docket No. 41) is hereby **DENIED.**