**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-40497

GRACIELA FRANCO,

Plaintiff-Appellant,

versus

CITY OF CORPUS CHRISTI,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

(C-99-CV-102)

May 16, 2001

Before WIENER and STEWART, Circuit Judges, and SMITH, District Judge.[*]

PER CURIAM:[**]

Plaintiff-Appellant, Graciela Franco ("Franco"), appeals the magistrate judge's grant of

summary judgment in favor of Defendant-Appellee, the City of Corpus Christi ("the City"), regarding

her discrimination suit filed pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101

("ADA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e ("Title VII").  For the

reasons assigned below, we affirm the magistrate judge's ruling.

---

[*] District Judge of the Western District of Texas, sitting by designation.

[**]Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be published
and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

FACTUAL AND PROCEDURAL BACKGROUND

Franco began working with the City in January 1983 as a grade 8 receptionist. By 1992, the City had promoted her to the position of a grade 20 legal secretary. In April 1994, Franco was diagnosed with bilateral carpal tunnel syndrome and underwent surgery to both her wrists. She returned to work in December 1994, with limitations, and was transferred to the City's Airport Department as the Operations and Maintenance Coordinator at her previous salary, although it was a grade 18 position.

On February 16, 1996, Franco suffered a new job-related injury. Her treating physician, Dr. Snook, diagnosed Franco as having mild bilateral carpal tunnel syndrome. Through its Worker's Compensation Center, he notified the City that Franco's symptoms, which affected her hands, arms, and upper body, were related to repetitive keying activities. Dr. Snook advised the City that Franco's job needed to be modified to exclude such activity in order to reduce the repetitive stress on her wrists.

In April of 1996, Dr. Edwin Melendez ("Dr. Melendez"), another one of Franco's physicians, recommended permanent revision in her job responsibilities to allow her to work in a light duty environment. He suggested that she not lift, push, or pull more than fifteen pounds. Moreover, Dr. Melendez advised that the City should limit Franco's typing to not more than twenty to thirty minutes at a time.

By May 1996, Franco had informed Viola Lopez ("Lopez"), the independent Rehabilitation Counselor assisting the City in its efforts to accommodate her, that she could no longer perform her job and that she believed that her limitations are permanent. Lopez attested that Franco claimed the City could do nothing to accommodate her. Thus, on May 15, 1996, the City placed Franco on a "no

work status" medical leave. Shortly thereafter, the city advertised and filled Franco's position in the Aviation Department.

Franco subsequently applied for disability retirement benefits with the Texas Municipal Retirement System on May 17, 1996. The record reflects, however, that the Texas Rehabilitation Commission ("TRC") agreed to provide Franco with a voice computer recognizer and a headset and that the City made a tape recorder available to Franco to help alleviate potential re-aggravation of her carpal tunnel syndrome from word processing, answering telephones, and taking notes. Moreover, the City offered Franco various employment opportunities from May 1996 until her resignation in January 1997. Maintaining that she was unable to perform the work, she refused to take the positions, even on a trial basis. Subsequently, Franco failed to attend an appointment with the City's occupational health specialist for an evaluation to facilitate the City in its efforts to accommodate her.

By early December 1996, her attorney requested that Lopez no longer contact Franco. Lopez accordingly closed Franco's file. On January 8, 1997, claiming that she was forced to resign to obtain her retirement funds, Franco submitted her letter of resignation to the City.

On February 16, 1999, Franco filed a petition in state court against the City alleging discrimination. Contending that Franco's allegations raised claims under Title VII and the ADA, the City removed the case to federal court. After Franco filed an amended complaint specifically averring these federal laws and the City filed an answer generally denying the merits of her claims, the parties consented to proceed before a magistrate judge.

Arguing that Franco could not prove that she was constructively discharged, that she had failed to allege retaliation as a motive for her purported discharge, and that her ADA claim was

3

barred by the statute of limitations, the City moved for summary judgment. In response, Franco conceded that she was not pursuing a cause of action for retaliation, but she maintained that she had been terminated in January 1997. Franco also argued that the statute of limitations did not bar any of her claims. In reply, the City asserted that Franco's response to its summary judgment motion contained an affidavit that impeached her deposition testimony.

The magistrate judge relied on Franco's deposition testimony when her affidavit contained contradictory attestations. She held that Franco failed to demonstrate her alleged constructive discharge and therefore did not present a prima facie case of discrimination under either Title VII or the ADA. Moreover, the magistrate judge concluded that Franco was unable to show that the City was remiss in trying to reasonably accommodate her carpal tunnel syndrome, not only because the TRC provided the equipment that she requested but also because Franco refused to accept the employment that the City subsequently offered her. Accordingly, the magistrate judge granted the City's motion for summary judgment. Franco now appeals that ruling.

DISCUSSION

I.      Standard of Review

This court reviews a grant of summary judgment de novo, applying the same standard as the magistrate judge. See Perenco Nigeria Ltd. v. Ashland, Inc., 242 F.3d 299, 304 (5th Cir. 2001). Under Fed. R. Civ. P. 56(c), "[a] motion for summary judgment is properly granted only if there is no genuine issue as to any material fact." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). If the moving party meets this initial burden of establishing the nonexistence of a genuine issue of material fact, the burden then shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp., 477 U. S. at 321.

4

The nonmoving party cannot, however, satisfy this summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"'An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" Arnold v. United States Dep't of Interior, 213 F.3d 193, 195 (5th Cir. 2000) (citation omitted). To determine whether such a genuine fact issue exists, this court views the facts and any inferences drawn therefrom in the light most favorable to the nonmoving party. Perenco Nigeria Ltd., 242 F.3d at 304. We do so, however, without making any credibility determinations and without weighing any evidence. Id. (citing Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 120 S. Ct. 2097, 2102, 147 L. Ed. 2d 105 (2000)).

II.    Title VII Claim

"The analysis for Title VII discrimination claims is well-known." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1089 (5th Cir. 1995) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). First, the plaintiff must establish a prima facie case that a protected factor motivated the defendant's employment decision. Id. She must show that: (1) she belongs to a protected class; (2) she was qualified to perform her job; (3) despite her qualifications, her employment was adversely affected; and (4) her position was filled by someone outside that protected class. Young v. City of Houston, Tex., 906 F.2d 177, 180 (5th Cir. 1990). The defendant then bears the burden to articulate a legitimate, nondiscriminatory reason for its employment decision.

5

Mayberry, 55 F.3d at 1089.  Upon doing so, the burden shifts back to the plaintiff to prove that the defendant's proffered reason was a pretext for discrimination.  Id.

Franco is of Hispanic descent, and after removing her from the Operations and Maintenance Coordinator position, the City filled the vacancy with Warren Perkins ("Perkins"), a white male. Thus, Franco established the first and fourth elements of her prima facie Title VII discrimination case. The magistrate judge concluded, however, that she did not show that the City constructively discharged her.

The magistrate judge based her grant of the City's motion for summary judgment on Franco's failure to demonstrate an adverse employment action sufficient to establish the third element of her prima facie case.  Although the order's reasoning does not specifically address whether the City, as the moving party under Fed. R. Civ. P. 56(c), showed the absence of a genuine issue of material fact, our review of the record supports the magistrate judge's ultimate conclusion that the City is entitled to summary judgment.

Franco's amended original complaint and deposition testimony assert that she was terminated on January 8, 1997,[1] because she was forced to resign.  Franco correctly notes that an employee can demonstrate that her resignation amounted to an adverse employment action by proving that her

[1] Based on a declaration that she made after her deposition testimony, Franco alternatively contends that she was constructively discharged as of November 2, 1996, the date ending her ninety-day period under the City's limited-duty policy.  Because this evidence inexplicably contradicts her previously sworn deposition testimony and her amended complaint, in which she attested that she resigned from her employment, Franco may not rely on it to defeat summary judgment.  See Davis v. Edwards & Sons, Inc., 823 F.2d 105, 107-08 (5th Cir. 1987) ("'[F]actual assetions in pleadings are . . . judicial admissions *conclusively* binding on the party that made them.'")(citation omitted); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996) ("It is well-settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.") (citations omitted).  As such, we pretermit Franco's alternative claim that she was constructively discharged on November 2, 1996.

6

employer constructively discharged her.  See Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000) ("When an employee resigns, he may satisfy the discharge requirement by proving constructive discharge.").  To establish that she was constructively discharged, however, Franco "must prove that [her] working conditions were so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign."  Ugalde v. W. A. McKenzie Asphalt Co., 990 F.2d 239, 242 (5th Cir. 1993).

Thus, Franco's "'resignation must have been reasonable under all the circumstances.'"  Brown, 207 F.3d at 782 (citation omitted).  But whether a reasonable employee would feel compelled to resign is, of course, dependent on the facts of each case.  Id.  This court considers the following factors, singly or in combination, to make such a determination:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] . . . .

Id.  (quoting Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 (5th Cir. 1994)).

In the instant case, Franco ardently contends that she suffered a complete loss of salary from May 1996 to January 1997 while the City was trying to secure another position for her.  Although the record supports the City's argument that it made several attempts to reassign her during this time,[2] Franco maintains that she could not perform those jobs while suffering from carpal tunnel syndrome.  However, she contends neither that the jobs amounted to an offer of continued employment on less favorable terms nor that the positions amounted to demotions.  Indeed, when the

---

[2] The City offered Franco a position in its Senior Community Services Department and two positions at the Department of Housing and Community Development.

7

City first responded to the onset of Franco's carpal tunnel syndrome by transferring her from the grade 20 position of legal secretary to Operations and Maintenance Coordinator in the Airport Department, a grade 18 position, it continued to pay Franco at the higher salary grade.

Moreover, the record reveals that the City neither badgered, harassed, nor humiliated Franco in a calculated attempt to encourage Franco's resignation. In fact, the City ultimately offered Franco the opportunity to return to work as an Operations and Maintenance Coordinator. Franco nevertheless failed to respond, attesting in her deposition that: "Financially, I couldn't take the job. By the time that they would give me the job and then by the time I might make my one regular paycheck, that was not going to cover the financial bind I was in . . . ." These circumstances do not present a material issue of fact upon which a jury could find that a reasonable employee would have felt *compelled* to resign. The district court, therefore, did not erroneously grant the City's motion for summary judgment against Franco's claim of discrimination under Title VII.

III.    ADA

The ADA provides that: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate" includes:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

> denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such

8

covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant . . . .

42 U.S.C. § 12112(b)(5)(A)-(B).

Under the McDonnell Douglas indirect method of proof used in Title VII actions, a plaintiff may establish a claim of disability discrimination. Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 162 (5th Cir. 1996) (citing Daigle v. Liberty Life Ins. Co., 70 F.3d 394 (5th Cir. 1995)). The plaintiff's prima facie case must show that: "(1) he or she suffers from a disability; (2) he or she is qualified for the job; (3) he or she was subject to an adverse employment action; and (4) he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees." Id.; see also Robertson v. The Neurological Med. Ctr., 161 F.3d 292, 294 (5th Cir. 1998) (listing the first three elements as sufficient to establish a prima facie case of discrimination under the ADA). If a plaintiff demonstrates the first three prongs, then the employer is required to make reasonable accommodations to the employee's known disabilities. Burch v. City of Nacogdoches, 174 F.3d 615, 619 (5th Cir. 1999).

The magistrate judge assumed that Franco demonstrated the first two elements of her prima facie case of disability discrimination. However, based on her earlier finding that Franco's resignation did not amount to a constructive discharge, the magistrate judge concluded that Franco could not establish that the City made an unfavorable decision because of her disability. Our consideration of the record and the parties' briefs confirms the magistrate judge's conclusion.

Franco now argues that the City took an adverse employment action against her when it removed her from the Airport Operations and Maintenance position. She bases this argument, in significant part, on her allegations that the City lowered the typing and driving requirement for the

9

position once Perkins was hired.[3]  Franco asserts that if the City had provided her with these accommodations she would have been able to continue performing the Airport Operations and Maintenance job.

These assertions are unsupported by relevant record evidence.  Specifically, Lopez's affidavit states that, after Franco aggravated her condition in February 1996, Franco expressed not only that the injury was permanent but also that the City could do nothing to accommodate her in the Airport Operations and Maintenance position.  Franco confirmed this conversation in her deposition testimony.  The pertinent exchange is as follows:

> Q.    Okay.  In May 1996 when you spoke with Ms. Lopez, did you think, at that time, your injuries were permanent?
>
> A.    At that time, I believe they were permanent.
>
> Q.    And -- and when I say permanent, did you believe that the restrictions caused by those injuries would be permanent?
>
> A.    Yes, sir, at that time.
>
> Q.    Do you remember saying anything to Ms. Viola Lopez during that May 1996 meeting to indicate to her that you felt there was nothing that could be done to accommodate you in your job?
>
> A.    At that job.
>
> Q.    The coordinator's job, correct?
>
> A.    Yes, sir.
>
> Q.    Okay.  You felt at that – at that time, like you were going to have to be moved to another job; is that right?
>
> A.    At that time, yes, sir.

---

[3] As evidence of these alleged changes, Franco relies on her sworn declaration and the affidavit of Edna Davis.

10

As discussed *supra* in note 2, Franco cannot rely, without explanation, on her declaration to impeach her previously sworn deposition testimony in an effort to create a fact issue sufficient to survive summary judgment. Franco provides no such explanation for the instant contradiction. We, therefore, conclude that no material issue of fact exists upon which a jury could find that the City took an adverse employment action against Franco when it removed her from the Airport Operations and Maintenance position.

We also find that the City nonetheless made every effort to reasonably accommodate Franco. It advised her to contact the TRC, which ultimately agreed to provide the voice recognizer and headset that she requested. The TRC's only condition was that it would refrain from distributing the equipment to Franco until she accepted a position with the City. The City offered Franco four employment opportunities, including her former Airport Operations and Maintenance position, all of which she refused.

The Fifth Circuit recognizes that "'the responsibility for fashioning a reasonable accommodation is *shared* between the employee and the employer.'" Loulseged v. Akzo Nobel, Inc., 178 F.3d 731, 736 (5th Cir. 1999) (quoting Principal Fin. Group, 93 F.3d at 165) (emphasis added). But when the "breakdown of the 'informal interactive process' is traceable to the employee and not the employer," an employer cannot be found to have discriminated against the employee based on her disability. Id. (citation omitted). Because no reasonable jury could find the City at fault for the breakdown of the interactive process on the facts presented in this case, the district court did not err in granting the City's motion for summary judgment against Franco's ADA discrimination claim.

CONCLUSION

11

No material issue of fact exists regarding Franco's discrimination claim under either Title VII or the ADA, and we, accordingly, AFFIRM the magistrate judge's grant of summary judgment in favor of the City.

AFFIRMED.