United States Court of Appeals,

Fifth Circuit.

No. 94-10825.

Robert MAYBERRY, Plaintiff-Appellant,

v.

VOUGHT AIRCRAFT COMPANY, Defendant-Appellee.

June 28, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before GARWOOD, JOLLY and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Robert Mayberry challenges an adverse summary judgment on his employment discrimination and retaliation claims. Because the summary judgment record fails to create a genuine issue of material fact (restated, would not permit a reasonable juror to find for Mayberry on either claim), we AFFIRM.

I.

Mayberry, who is black, has been employed as a machine operator by Vought Aircraft Company since 1979. Vought uses a progressive discipline program consisting of a verbal warning, written warning, suspension, and termination. Only disciplinary actions occurring within the prior year can be considered in imposing progressive discipline.

Mayberry was disciplined three times in 1991 for poor workmanship in violation of the Vought Code of Conduct, receiving a verbal warning in March, two written warnings in June, and a

1

three-day suspension in December.[1]  He filed union grievances for each disciplinary action, resulting, *inter alia,* in the agreement that, if he had no further problems with his work until December 2, 1992, he would be reimbursed for his 1991 suspension.[2]  On October 26, 1992, $8,000 in parts were "scrapped" (damaged) at Mayberry's work station.  He blamed the damage on a machine malfunction, but Vought determined that he was at least partially at fault.  Although Vought could have terminated Mayberry (because his suspension was less than a year old), it elected instead to suspend him, in view of his seniority and the fact that it could not determine the degree to which the machine may have been responsible for the damage.  Mayberry was suspended for 13 days.

Mayberry filed this action in September 1993, claiming that his suspension was on account of his race, and/or in retaliation for prior discrimination claims brought against Vought and his participation in demonstrations against Vought for its alleged discriminatory practices.  On Vought's motion for summary judgment, the district court held that Mayberry failed to establish a prima facie case for retaliation, and, assuming a prima facie case of discrimination, that Mayberry was unable to overcome Vought's defense that the suspension resulted from its honest belief that

---

[1]Vought's Code of Conduct states, in relevant part: "Defective work resulting from inattention to the job, negligence or carelessness may make it necessary for the company to take corrective action.  Deliberate production of defective work may result in discharge".

[2]Mayberry also filed discrimination charges with the Equal Employment Opportunity Commission, none of which resulted in a finding of discrimination.

Mayberry had violated the work-rule. Accordingly, summary judgment was entered for Vought.

                                    II.

Mayberry contests the dismissal of both claims. We review summary judgments *de novo,* to determine, *inter alia,* whether any genuine issue of material fact exists. *Calpetco 1981 v. Marshall Exploration, Inc.,* 989 F.2d 1408, 1412 (5th Cir.1993). For that aspect, we draw all reasonable inferences in favor of the nonmovant, and ask whether the evidence in the summary judgment record is such that no reasonable juror could find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).

The analysis for Title VII discrimination claims is well-known. *See e.g., St. Mary's Honor Ctr. v. Hicks,* --- U.S. ----, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor. Once established, the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason. The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination. But, if the defendant has offered a legitimate nondiscriminatory reason for its action, the presumption

                                    3

of discrimination derived from the plaintiff's prima facie case "simply drops out of the picture", *Hicks,* --- U.S. at ----, 113 S.Ct. at 2749, and "the ultimate question [is] discrimination *vel non* ". *Id.* at ----, 113 S.Ct. at 2753 (citation omitted).

## A.

In work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing "either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly". *Green v. Armstrong Rubber Co.,* 612 F.2d 967, 968 (5th Cir.), *cert. denied,* 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102 (1980). Mayberry travels both avenues, claiming that he was not responsible for the damage, and that, even assuming he was, similarly situated white employees have not been disciplined.

## 1.

For showing that white employees were not disciplined, Mayberry's evidence consists of reports from Vought's Accumulated Scrappage Material record (ASM), read together with Vought's list of violations of its Code of Conduct. The ASMs, which record each instance when a part is scrapped, reveal such instances (for white and black employees) that have no corresponding entry on Vought's violations list. Significantly, the ASMs often include notations such as "poor workmanship" or "operator error", apparently to assign cause for the scrappage. Based on this evidence, Mayberry urges that white employees were treated differently from him.

To establish a prima facie case in this manner, Mayberry must

4

show that white employees were treated differently under circumstances "nearly identical" to his. *Little v. Republic Ref. Co.,* 924 F.2d 93, 97 (5th Cir.1991); *Smith v. Wal-Mart Stores,* 891 F.2d 1177, 1180 (5th Cir.1990); *Davin v. Delta Air Lines, Inc.,* 678 F.2d 567, 570-71 (5th Cir. Unit B 1982). In this regard, Mayberry has offered evidence that white (and black) employees have scrapped parts due, apparently, to operator error or poor workmanship, and were not disciplined. However, as Vought explained, and as Mayberry's own evidence confirms, it does not even conduct a disciplinary investigation, much less take disciplinary action, each time a part is scrapped. The decision to investigate is based on two factors: the history of poor work performance of the employee, and the cost of the damaged parts. Mayberry fit both factors; he had several recent instances of poor work performance, and the amount of damage was $8,000.

For whether a white employee in "nearly identical" circumstances has received treatment different from Mayberry, reference to the ASMs is of little value. Vought notes that they are not intended, and are not used, for disciplinary purposes. Rather, they serve only to maintain a record of each part that is scrapped, and to provide authorization for the part's replacement. Most importantly, they make no reference to the work history of the employee or the amount of damage. Accordingly, they are not evidence that white employees in "nearly identical" circumstances

5

have been treated differently.[3]  To the contrary, Mayberry's own evidence reveals that, of the 14 other employees in his division who were disciplined for their workmanship between 1991 and 1994, none were black—12 were white and two were Hispanic.  In sum, Mayberry's evidence could not support a reasonable juror's finding that he was treated differently from white employees.  As such, he fails to make a prima facie case on this basis.

2.

On the other hand, a prima facie case may be established by showing that the plaintiff did not violate the work-rule for which he was disciplined.  *Green,* 612 F.2d at 968.  We agree with the district court that Mayberry created a fact question on whether he was responsible for the damage.  Although the conclusion from Vought's investigation was that Mayberry was at least partially at fault, Vought admitted that "it could have been possible to have had a software problem".  Furthermore, Mayberry offered evidence that his machine had malfunctioned in the past.  This, combined with Mayberry's affidavit statement that he was not at fault, creates a reasonable question of whether Mayberry violated the work-rule.

Vought responds to Mayberry's prima facie case by insisting that there was no racial motivation in its decision to suspend

---

[3]The ASMs may well have been a starting point from which to build a case that would withstand summary judgment.  Mayberry could have gained information, through discovery, on the individuals listed in the ASMs, which may well have substantiated his claim of disparate treatment.  Without more, however, the ASMs are not helpful.

Mayberry; that the decision was based solely on its conclusion, following an investigation, that Mayberry was at least partially at fault. With this, Vought has discharged its burden of production,[4] and the burden shifted to Mayberry to prove that Vought's proffered reason is merely a pretext for discrimination. *Hicks,* --- U.S. at ----, 113 S.Ct. at 2749.

Mayberry attempts to overcome Vought's nondiscriminatory reason essentially by reasserting his prima facie evidence. As discussed below, we conclude that, as a matter of law, Mayberry has failed to rebut that nondiscriminatory reason.

The material fact issue on whether Mayberry was at fault exists only because Vought admitted that, although it found no evidence of machine error, it could not be *certain* that some sort of machine malfunction did not occur.[5] Nonetheless, in Vought's judgment it was clear enough that Mayberry was partially at fault. And, because it was not *certain* that Mayberry was completely at fault, Vought elected only to suspend him, whereas it could have terminated him. Even so, Vought's uncertainty, together with Mayberry's adamant denial, allows for a reasonable question of

---

[4]Mayberry appears to suggest that he need not rebut Vought's nondiscriminatory reason because a fact issue exists on whether he violated the work-rule. Vought's burden, however, is only one of production. *Hicks,* --- U.S. at ----, 113 S.Ct. at 2749. It "need not persuade the court that it was actually motivated by the proffered reasons". *Id.* (quoting *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094).

[5]The data read-out on the machine, which would apparently have indicated if there had been machine error, "had been cleared". Mayberry denied having cleared the machine, and insisted that it lost power and cleared itself.

fact. Mayberry seizes on this fact question as the basis for his contention that Vought's nondiscriminatory reason for the suspension is not credible.[6] Mayberry misses the mark. The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.

> [E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue.... [A] dispute in the evidence concerning ... job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence.

*Little,* 924 F.2d at 97. *See also Sherrod v. Sears Roebuck & Co.,* 785 F.2d 1312 (5th Cir.1986); *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1256 (5th Cir.1977); *Jones v. Gerwens,* 874 F.2d 1534, 1540 (11th Cir.1989).

Attempting to offer more than the mere dispute over whether Vought properly found him at fault, Mayberry resorts to the evidence we rejected in the context of his prima facie case: that white employees are treated differently. Needless to say, Mayberry's evidence of disparate treatment is no more helpful or persuasive in the context of rebutting Vought's nondiscriminatory explanation. As noted, Mayberry has not offered evidence

---

[6]In their briefs, the parties argued at length over whether a plaintiff may rebut a defendant's nondiscriminatory reason by showing only that the reason is not credible, without offering proof, in addition to the prima facie case, of discriminatory motive. Our en banc court may soon consider this issue. *See Rhodes v. Guiberson Oil Tools,* 39 F.3d 537 (5th Cir.1994), *reh'g en banc granted,* 49 F.3d 127 (5th Cir.1995). Because we conclude that no reasonable juror could find that Vought's nondiscriminatory reason was not credible, we do not reach this issue.

sufficient to support a finding that white employees in circumstances "nearly identical" to his have been treated differently.  *See Little,* 924 F.2d at 96-97 (rejecting rebuttal evidence of disparate treatment because circumstances were not "nearly identical").

Finally, Mayberry appears to suggest that Vought's nondiscriminatory explanation is suspect because, according to Mayberry, Vought has a propensity for discrimination because of a finding by the Department of Labor that Vought had occasionally discriminated on the basis of race in its promotion decisions.[7] We will not entertain such a suggestion.  According to his affidavit, Mayberry has brought, or been a party to, at least six prior charges of discrimination against Vought, none of which have resulted in a finding of discrimination against Mayberry.  Just as we cannot assume that Mayberry's past conduct suggests a propensity to file false charges, we cannot assume that Vought's past conduct suggests it has discriminated against Mayberry.[8]

In sum, based on the summary judgment record, a reasonable juror could not conclude that Mayberry received the 13-day suspension because of his race.  Therefore, summary judgment on

---

[7]Mayberry also asserts that his workmanship violations began to issue only after he joined in a class action discrimination complaint against Vought, and after his participation in picketing against it.

[8]We note that the Department of Labor found only individual instances of discrimination in promotion decisions, and "[t]hese instances did not occur in any pattern or practice that would suggest Blacks, as a class, were treated differently because of their race".

this claim was proper.

B.

A prima facie case of retaliation exists if the plaintiff establishes that (1) he participated in statutorily protected activity, (2) he received an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Armstrong v. City of Dallas,* 997 F.2d 62, 65 n. 3 (5th Cir.1993). The parties agree that Mayberry meets the first two elements. Vought contends, however, and the district court agreed, that Mayberry failed to create a material fact issue on the existence of a causal connection between his protected activity and his suspension.

Mayberry asserts that the timing of the suspension in relation to his protected activity establishes the required nexus.[9] The timing of the adverse employment action can be a significant, although not necessarily determinative, factor. *See e.g., Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 (5th Cir.1992) (discussing evaluation of "timing" evidence). In this case, however, it is unclear that the timing of the suspension benefits Mayberry's case.

According to his affidavit, Mayberry first engaged in protected activity (filed an EEOC charge) sometime "in the mid 1980's", and continued, with regularity, in protected activity

---

[9]Mayberry also rests a prima facie case on the basis of the evidence offered for his discrimination claim. To the extent that such evidence may be relevant to a prima facie case for retaliation, we find it insufficient, as discussed in part II.A., *supra.*

10

through 1992.[10]   In this regard, there is nothing inherently "suspicious" about a 13-day suspension that occurs at least several years after protected activity begins.   Indeed, one might argue that the "timing" here is evidence *against* retaliation.   We need not go that far.   Suffice it to say that we find insufficient evidence to support a finding that "but for" Mayberry's protected activity, he would not have received the 13-day suspension.   *See Jack v. Texaco Research Ctr.,* 743 F.2d 1129, 1131 (5th Cir.1984) (noting that prima facie retaliation requires "but for" causation).

Furthermore, assuming *arguendo* that Mayberry established a prima facie case, he fails, for summary judgment purposes, to overcome Vought's legitimate nondiscriminatory reason for the suspension—its belief that Mayberry violated the work-rule.   The analysis in part II.A, *supra,* applies here.

### III.

For the foregoing reasons, the judgment is

AFFIRMED.

---

[10]It is unclear when Mayberry filed his first EEOC complaint.  Mayberry states in his affidavit that he had filed EEOC complaints "in the mid 1980's".  Mayberry filed an EEOC charge in connection with his delayed promotion to Class B machine operator.  He again filed an EEOC charge in connection with his delayed promotion to Class A machine operator.  The class A promotion occurred in 1988;  therefore, his first EEOC complaint (if it was for his class B promotion) must have occurred prior to 1988.  Mayberry also engaged in protected activity (discrimination charges and/or picketing against Vought) in 1988, 1990, 1991, and 1992.