# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

m 99-11333
Summary Calendar

---

CHARLES E. BIRDOW,

Plaintiff-Appellant,

VERSUS

WILLIAM HENDERSON,
POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas
(3:97-CV-1715-P)

---

May 5, 2000

Before SMITH, BARKSDALE, and
PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Charles Birdow appeals an adverse summary judgment denying his race discrimination claim. Finding no genuine issue of material fact as to pretext, we affirm.

## I.

Birdow, a black male, began working for the United States Postal Service ("USPS") in 1978 and was Manager of Distribution Operations ("MDO") at the Dallas Bulk Mail Center ("DBMC"). In January 1995, postal inspectors began investigating allegations of sexual harassment at DBMC, followed by an investigation by USPS Labor Relations. Birdow received a notice of proposed removal for improper conduct (sexual harassment and employee favoritism) and unsatisfactory job performance and was terminated based on the charges of improper conduct.

Three female employees accused Birdow of sexual harassment, and six supervisors alleged that he favored his employee-girlfriend in a manner that disrupted postal operations. Birdow denied the allegations and, after exhausting administrative remedies, sued for race discrimination in violation of title VII.

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The court granted summary judgment, concluding that Birdow had failed to establish a *prima facie* case of racial discrimination and to present evidence that the USPS's articulated non-discriminatory reason for discharge was pretextual.

## II.

We articulated the analysis for title VII discrimination cases in *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089-90 (5th Cir. 1995) (internal quotation marks, footnotes, and citations omitted):

> The plaintiff must establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor. Once established, the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason. The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination. But, if the defendant has offered a legitimate nondiscriminatory reason for its action, the presumption of discrimination derived from the plaintiff's prima facie case simply drops out of the picture, and the ultimate question is discrimination vel non.

Because this case arises on summary judgment, Birdow need only raise a genuine issue of material fact regarding pretext.

In a disparate treatment discharge case, the plaintiff must first prove that he was qualified for the position and was discharged under circumstances giving rise to an inference of unlawful discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). This circuit follows *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), in articulating the following generally applicable four-part test: The plaintiff may prove a *prima facie* case of discrimination by showing that "(1) he is a member of a protected group; (2) he was qualified for the job that he held; (3) he was discharged; and (4) after his discharge, his employer filled the position with a person who is not a member of the protected group." *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990). Where the fourth factor is not applicable, as where the discharged employee is not replaced, the plaintiff instead may show that a similarly situated employee who is not of his protected class was not discharged. *See id*.

The USPS acknowledges that Birdow has satisfied the first three elements but claims he has failed to establish the fourth. Birdow contends that he has established the fourth factor both with his deposition testimony that he was replaced by a white male and with evidence that several similarly situated white management employees were not disciplined. Although the USPS and the district court focus on the latter assertion, there is no evidence contradicting Birdow's deposition testimony that he was replaced by a white male.

The USPS instead focuses on whether the replacement was permanent or temporary. While it is difficult to understand the relevance of that distinction, we need not decide whether Birdow's evidence satisfied his *prima facie* burden, because summary judgment was appropriate based on his failure to raise a genuine issue of material fact as to pretext.[1]

---

[1] The parties fail to clarify the confusing state of the record regarding Birdow's replacement. Birdow has consistently asserted, beginning with his first amended complaint, that he was replaced by a white employee. In its answer, the USPS admitted that Birdow was replaced by a white employee. The USPS later sought summary judgment, however, on the ground that Birdow had presented no such evidence, seemingly in conflict with Birdow's deposition testimony.

The district court seems to have overlooked this issue. We need not decide it, because even assuming, *arguendo*, that Birdow made a *prima facie* case, he failed to raise a genuine issue of material fact regarding pretext. In this regard, we note the Court's language in *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983), that "[w]here the defendant has done
(continued...)

### III.

The USPS produced evidence of a legitimate nondiscriminatory reason for the discharge, namely evidence of sexual harassment and employee favoritism. Three female employees accused Birdow of sexual harassment.

Ontrecia Harrison received a gift from Birdow that she returned. Harrison claimed that Birdow attempted to transfer her to a less desirable position shortly thereafter. Cheryl Thomas complained that Birdow had asked her out on a date on multiple occasions and that she was given an unfavorable evaluation and placed on restricted sick leave after rejecting these advances. Bettye Jo Washington complained that Birdow had attempted to kiss and fondle her on multiple occasions. Washington made contemporaneous complaints to two supervisors and alleged that she was used less often as an acting supervisor after rejecting Birdow's advances. The testimony of other employees corroborated key elements of these claims.

Six DBMC supervisors reported that Birdow used his position to advantage his girlfriend, mail handler Felicia Abu. Multiple supervisors alleged that when after-tour overtime was called for Abu's entire shift, Birdow would release Abu, causing problems with staffing and morale. There also were allegations that Birdow spent an inordinate amount of time visiting with Abu while she was on duty, so much so that one supervisor had to request that Birdow leave Abu alone so she could work.

Birdow attempts to demonstrate that the USPS's proffered nondiscriminatory reason is

___

(...continued)
everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff" (internal quotation marks omitted).

pretextual by alleging that white managers who engaged in conduct similar to his were not discharged. At the time of his removal, there were six MDO's working at DBMC, four blacks and two whites. Two of the blacks were not disciplined, nor were the two whites. Birdow is not aware of any preferential treatment received by one of the whites but claims that the other, Robert Deal, was similarly situated in that Deal had dated subordinates, eventually marrying one of them, and allegedly had worked to align his wife's days off with his own. Birdow does not claim that Deal had any sexual harassment allegations leveled against him.

Birdow also claims that Gary Gale, a white Supervisor of Distribution Operations ("SDO"), was similarly situated and treated more favorably. The SDO position is the level of supervision directly below MDO. Birdow's knowledge of Gale's alleged wrongdoing consists of a rumor that Gale had whispered sexual innuendoes to a mail handler. In fact, after an anonymous call reported that Gale was involved in a consensual relationship with a subordinate and was padding her time card, he was placed on administrative leave but was reinstated when the investigation found no evidence to substantiate the allegation.

Birdow also claims that SDO Ron Townsend sexually harassed an employee named Sandra Beavers, but Birdow has no evidence to back up this allegation and does not know whether Townsend was disciplined. Lastly, Birdow introduced a statement by Alvin Cole, a supervisor at DBMC, that numerous management personnel dated employees.

Because none of these employees was involved in nearly identical circumstances, Birdow fails to demonstrate that any comparable employee was treated more favorably, and thus he fails to prove that the proffered reason for discharge is false. *See Burdine*, 450 U.S. at 256; *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991). Whereas Birdow sexually harassed several subordinates and extended job benefits to his girlfriend in a manner that disrupted employer

operations, the only proffered employee of equal seniority, Robert Deal, had no sexual harassment charges brought against him. SDO's are of lesser seniority, and Birdow has no knowledge or evidence of any wrongdoing by Gale or Townsend.

AFFIRMED.