**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 01-10382
Summary Calendar

---

KARLA GARZA,

Plaintiff - Appellant,

VERSUS

PRESTIGE FORD GARLAND LIMITED PARTNERSHIP, doing business as
Prestige Ford,

Defendant - Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas
(3:00-CV-400)

---

September 26, 2001

Before JOLLY, DeMOSS, and PARKER, Circuit Judges.

PER CURIAM:[*]

## I.  PROCEEDINGS BELOW

Pursuant to a complaint filed with the Equal Employment
Opportunity Commission (EEOC), Karla Garza brought a Title VII

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

claim of discrimination on the basis of sex against her former employer, Prestige Ford. She subsequently added a claim of impermissible retaliation by Prestige Ford in reaction to her lawsuit. Prestige Ford moved for summary judgment under FED. R. CIV. P. 56. Following a hearing on that motion, the trial court granted summary judgment for Prestige Ford. Garza appeals the grant of summary judgment (1) as to her Title VII claim of sex discrimination; (2) as to her claim of retaliation; and (3) in light of her claim of serious credibility issues on the part of Prestige Ford's representatives. Garza has also asked whether it would have been error if the trial court had granted summary judgment on the issue of whether she had sustained damages. The opinion of the district court did not address the issue of damages nor base its judgment on any determination of Garza's claim for damages. Therefore, we will not address that issue. The judgment of the district court is AFFIRMED.

## II. BACKGROUND

Prestige Ford hired Garza as a used car salesperson although she had no experience in car sales. She did have some experience in retail sales, which led Prestige Ford to give her an opportunity to "sink or swim," although the dealership did not have a formal training program for novices. She contends that she successfully sold five automobiles in eight days between being hired on April 22 and being terminated on or about May 3, 1999. Prestige Ford asserts that Garza was unable to close any of those sales on her

2

own, required the assistance of other salespersons (including her brother, who was also employed by Prestige Ford), objected to splitting her commissions with those other salespersons after they had assisted her and was generally disruptive to the conduct of business because of her inexperience.

Supervisor Pablo Villarreal ultimately told her she would be terminated as a car salesperson. The termination document reflects the reason for her termination as her lack of experience. Mr. Villareal offered Garza an alternative position assisting another salesperson, from which she could gain the necessary skills, but she refused. Garza asserts that Mr. Villarreal initially told her that she was being terminated because she could not work at Prestige Ford's place of business while her brother was also employed there. She challenged Villarreal's statement on the basis that there were other sets of brothers working at the dealership and claims he then changed his stated reason of termination to Garza's lack of experience. Finally, Prestige Ford arranged a job for Garza with Skyline Ford, a dealership which had a formal training program.

Garza remained with Skyline for four months and resigned in September, 1999. She worked for the Accident and Injury Clinic until December, 1999, when she quit to take a trip to Mexico.

On her return in February, 2000, Garza took a job with Allstate Insurance Company under Agent Teresa Fuston. Ms. Fuston later received a phone call from Juan Carlos Olvera, one of

3

Prestige Ford's employees. Mr. Olvera informed Ms. Fuston of Garza's EEOC complaint and lawsuit. He and other employees regularly referred customers to Ms. Fuston for car insurance. He advised her that neither he nor his co-workers wanted to have any contact with Garza. Mr. Olvera was not a supervisor nor did he have power to hire, fire or direct other employees. He did not state that he was representing Prestige Ford and Ms. Fuston did not believe that he was acting on the dealership's behalf. Ms. Fuston informed Garza of the phone call and advised her that her employment would not be affected in any way.

Garza asserts that she used a false name in the office to avoid contact with Prestige Ford's employees and was paid by personal check to avoid identifying her with the Allstate office. She agrees that Ms. Fuston treated her no differently after Mr. Olvera's phone call. In March, 2000, Garza and Ms. Fuston argued over how Garza handled certain customers, which resulted in their departure. Garza resigned after that disagreement, although Ms. Fuston asked her to remain. Garza then amended her Title VII complaint, adding a complaint of retaliation by Prestige Ford, based on Mr. Olvera's phone call which Garza claims led to her "constructive discharge" from Allstate.

During the February 16, 2001, hearing on summary judgment, the trial court ruled from the bench that Garza's *prima facie* case, though weak, had been established. The court further ruled that

4

Prestige Ford had offered a legitimate, non-pretextual reason for Garza's termination against which Garza had not presented adequate summary judgment evidence to create an issue of material fact. Also, the court ruled that Garza's departure from Allstate was predicated on her disagreement with Ms. Fuston over the lost customers, which had no causal connection to Mr. Olvera's phone call. Therefore, the trial court held that Garza's resignation was not a constructive discharge caused by any act of retaliation on the part of Prestige Ford.

### III. ANALYSIS

This court conducts a *de novo* review of a grant of summary judgment, ensuring that no genuine issue of material fact exists and that judgment in favor of the appellee was warranted as a matter of law. *See Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000). Under FED. R. CIV. P. 56(c), summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, reflects no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986); *Hall v. Gillman, Inc.*, 81 F.3d 35, 36-37 (5th Cir. 1996).

### A.

Under Title VII analysis, (1) a plaintiff must establish a *prima facie* case of discrimination; (2) the defendant may then offer a valid, non-discriminatory reason for the alleged

discriminatory action; and, (3) the plaintiff then must show that the defendant's offered reason is merely pretext. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). The Title VII plaintiff bears at all times the "ultimate burden of persuasion." *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993).

A *prima facie* claim is established when a plaintiff shows that she is a member of a protected class under Title VII; that she was qualified for the position; that she suffered an adverse employment decision; and that the adverse employment decision was differentially applied to her. *See McDonnell Douglas*, 411 U.S. at 802; *Rubenstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000). Here, we determine, as did the trial court, that Garza met the *prima facie* case requirements. Her claim is discrimination on the basis of sex because she is female; she was in fact terminated; and, by her claim of the circumstances, males who were co-employed by Prestige Ford with their siblings were not also terminated. As the district court explained, Garza was not qualified for the specific position, but the fact that Prestige Ford hired her for the position sufficed to show she met the basic qualification for being hired. On that basis, we agree that Garza established her *prima facie* case.

Prestige Ford offers as its reason for terminating Garza's

employment that Garza in fact lacked experience required in the position. It hired Garza originally in the expectation that she would be able to pick up the skills needed for car sales on the job, even though Prestige Ford did not offer a formal training program. Instead, Prestige Ford found that her reliance on others to close her sales and her objections to splitting her commission were disruptive. Garza was offered the choice of a lower level job under qualified supervision, from which she could learn the sales skills, or termination. She refused the lower level job. This is a legitimate and non-discriminatory reason for terminating an employee and is consistent with an earlier decision to hire an individual expected to learn on the job.

To prevail at trial, Garza would have to prove that Prestige Ford's offered reason is merely pretext for its actual discriminatory intent. In the summary judgment context, however, Garza is only required to show an issue of material fact regarding pretext. *See Hall v. Gillman, Inc.*, 81 F.3d 35, 37 (5th Cir. 1996). Garza still must present competent summary judgment evidence in doing so. Unsubstantiated assertions are not competent summary judgment evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

In this case, Garza has offered no evidence other than her own assertion by affidavit dated November 1, 2000, that Mr. Villareal

told her that she was being terminated because her brother also worked at the Prestige Ford dealership. That assertion has not been borne out in any of the evidence, other than her own affidavit, submitted in this case. Further, her affidavit is founded extensively on hearsay evidence which the trial court properly excluded from consideration. We will do the same. Additionally, the reason for termination Mr. Villareal gave on Garza's Employment History form was "lack of experience," citing the reports of several employees and unit supervisors of Prestige Ford. The remarks entered on the form go on to indicate that Garza was in a ninety day probationary period and that Prestige Ford "got employee new work arrangements at Skyline Ford." This, along with substantiating deposition testimony, is convincing.

Garza cites "serious credibility issues on the part of Defendant's representatives" to bolster her assertion of sex discrimination. She characterizes statements made by Mr. Villareal and Mr. Gutierrez in deposition, for example, as being so contradictory as to be patently "false." Those statements show only that their memories in retrospect differ as to whether they made the decision to terminate Garza jointly or whether they discussed the matter together and one of them made the actual decision. Another "credibility issue" claimed by Garza takes umbrage with Mr. Villareal's comment on Garza's Employment History form that he had "discussed options" relating to Garza's termination with Bill Peace, Prestige Ford's Special Projects

8

Manager.  Garza points out that Mr. Peace stated in deposition that he did not discuss "options" with Mr. Villareal.  What he did say, however, was that Mr. Villareal consulted him regarding the impending termination and asked him for input, which Mr. Peace provided.  Again, this is little more than a minor differentiation of language or a subtle difference of individual memory.

The most important "credibility issue" Garza points to is in the affidavit of Charlie Nixon, Prestige Ford's General Manager. He asserted "personal knowledge" of the individuals involved and the facts surrounding Garza's termination when, in fact, he based his affidavit on second-hand reports.  However, the trial court sustained Garza's objection to Mr. Nixon's affidavit on that point and excluded it from consideration in reaching its summary judgment determination.  The court considered only that portion identifying Mr. Nixon as Prestige Ford's custodian of records and authenticating the Employment History form.  Again, we have done the same and thus avoid any credibility issue engendered in Mr. Nixon's affidavit.

Garza's claim of Prestige Ford's lack of credibility is thus resolved and casts no issue of material fact of pretext on Prestige Ford's reasons for Garza's termination.

On these bases, Garza's Title VII claim is unsupported and Prestige Ford's legitimate, non-discriminatory reason for terminating her survives Garza's claim of pretext.

B.
9

A *prima facie* case of retaliation exists if Plaintiff establishes that (1) she participated in statutorily protected activity, (2) she received an adverse employment action and (3) a causal connection exists between the protected activity and the adverse action. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995).

Here, Garza's action in filing an EEOC complaint and lawsuit is obviously protected activity. She claims that she suffered an adverse employment action when Mr. Olvera contacted Ms. Fuston to inform Ms. Fuston of Garza's complaints. Garza characterizes Mr. Olvera as an agent for Prestige Ford and her resignation from Ms. Fuston as a constructive discharge caused by Prestige Ford's retaliatory phone call. Her analysis fails.

Title VII defines "employer" to include "any agent of such a[n employer]." *See* 42 U.S.C. § 2000e(b). Agency in the Title VII context requires that, for an employee's action to be imputed to an employer, the employee must be acting in a managerial capacity and in the scope of employment when committing the wrong. *See Rubinstein, supra,* 218 F.3d at 405. Evidence must support such a finding. *Id.* Whether an agent is a manager is a fact-intensive inquiry. *See Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 285 (5th Cir. 1999)(en banc). Considerations include a determination of what the individual is authorized to do by the principal; whether the individual has discretion as to what is done

and how it is done; and whether the individual has the power to make independent decisions regarding personnel matters or to determine policy. *Id.*

The fact that Mr. Olvera is a salesperson without managerial discretion or authority is uncontested. Garza's agency claim is predicated on her assertion that Mr. Olvera called Ms. Fuston at the behest of one of Prestige Ford's managers, Mr. Felix Gutierrez. On that basis, she asserts that Mr. Olvera acted with Prestige Ford's authorization via its manager, Mr. Gutierrez. Garza claims, in her affidavit, that Ms. Fuston told Garza that Mr. Olvera told Ms. Fuston that he had been asked by Mr. Gutierrez to call and threaten to withhold referrals. Presumably, the trial court disregarded this double hearsay testimony as we do. She offers no other evidence whatsoever that Mr. Olvera acted other than on his own behalf. Ms. Fuston has testified that Mr. Olvera made no such statement to her, that he spoke to her as her friend and that she recognized that he was not representing Prestige Ford in any official capacity.

Under these circumstances, Mr. Olvera was not acting as an agent of Prestige Ford and therefore any statement he may have made to Ms. Fuston cannot be considered as "retaliation."

Finally, Garza quit her employment with Ms. Fuston because of an argument between the two of them relating to the handling of potential insurance customers. There is no evidence, other than

11

Garza's claim, showing any causal connectivity whatsoever between Mr. Olvera's phone call and her decision to quit.

On these bases, Garza's claim of retaliation is meritless.

IV.   CONCLUSION.

For the foregoing reasons, the judgment is AFFIRMED.