EQUAL EMPLOYMENT
OPPORTUNITY
COMMISSION

v.

COLUMBIA SUSSEX CORPORATION.

Civil Action No. 07–701–JJB.

United States District Court,
M.D. Louisiana.

June 29, 2009.

its of the parties' positions, I find that attorneys' fees should not be awarded.

Gregory Thomas Juge, U.S. Equal Employment Opportunity Commission, New Orleans, LA, for Equal Employment Opportunity Commission.

Bethany Brantley Johnson, Ashley Eley Cannady, Herbert C. Ehrhardt, Stephen A. Brandon, Wesley D. Ehrhardt, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Ridgeland, MS, for Columbia Sussex Corporation.

### RULING

JAMES J. BRADY, District Judge.

Before the court are the parties' cross motions for summary judgment. (Doc. 42 & 43). An opposition and reply have been filed with respect to both motions. Additionally, Columbia Sussex has brought two motions to strike declarations submitted by the EEOC in opposition to Columbia Sussex's motion for summary judgment. (Docs. 49 & 50). The EEOC has filed oppositions to both motions to strike. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331 *et seq.* Oral argument with respect to the above pending motions is not necessary.

### Background

The EEOC claims that Columbia Sussex, d/b/a Sheraton Downtown Convention Center Hotel/Belle of Baton Rouge Casino unlawfully terminated Richard Knight in violation of Title VII of the Civil Rights Act of 1964. Specifically, the EEOC alleges that Mr. Knight was terminated because of his sex and in retaliation for complaining of disparate treatment based on sex.[1] The EEOC asserts that the alleged

---

1. 42 U.S.C. § 2000e–2(a)(1) makes it an un-  lawful employment practice to "discharge any

unlawful employment practices were done intentionally and with malice or reckless indifference to Mr. Knight's federally protected rights and seeks compensatory damages, including back wages, front pay, and damages for emotional distress, as well as punitive damages.[2]

Mr. Knight was employed by defendant as a Banquet Manager. The EEOC asserts that during a "stand up" meeting on the morning of October 30, 2006, the defendant's General Manager, Tony Dughaish discriminated and retaliated against Mr. Knight.[3] According to the EEOC, Renee Rice,[4] the Food and Beverage Manager, complained to Mr. Dughaish during the meeting about his behavior toward managers. The EEOC asserts that Mr. Dughaish ordered Ms. Rice into his office and she refused, requesting that a Human Resources representative be present. Mr. Knight allegedly also complained about Mr. Dughaish's treatment of managers and was also ordered into Mr. Dughaish's office. Like Ms. Rice, Mr. Knight stated he would not go without a Human Resources representative. Mr. Dughaish then terminated Mr. Knight. The EEOC asserts that Mr. Knight and Ms. Rice were similarly situated employees and that the disparate treatment afforded them by Mr. Dughaish evidences discrimination on the basis of sex. Additionally, the EEOC asserts that Mr. Knight was terminated in retaliation for his complaint to Mr. Dugha-

ish that he was treating Ms. Rice more favorably because she was a woman.

Columbia Sussex argues that Mr. Knight and Ms. Rice were not similarly situated employees and therefore the termination of Mr. Knight cannot be compared with the retention of Ms. Rice, despite the fact that both complained to Mr. Dughaish about his behavior toward managers and both refused to go into Mr. Dughaish's office without a Human Resources representative. In support of this argument, Columbia Sussex asserts that Mr. Knight had a poor performance record with Columbia Sussex and was actually informally fired by Mr. Dughaish two days prior to the stand up meeting for poor performance. Columbia Sussex asserts that while Ms. Rice was a good employee who wanted to speak with Mr. Dughaish about his behavior, Mr. Knight was a poor employee with whom Mr. Dughaish had to speak on October 30 in order to formalize the October 28 termination decision. Columbia Sussex also argues that Mr. Knight's complaints about disparate treatment occurred *after* Mr. Dughaish terminated him and therefore temporally could not form the basis of a retaliation claim. Finally, Columbia Sussex argues that this suit should be dismissed based on the EEOC's alleged failure to engage in conciliation efforts.

### Analysis

individual ... because of such individual's race, color, religion, sex, or national origin....". 42 U.S.C. § 2000e–3(a) makes it an unlawful employment practice for an employer "to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice....".

**2.** *See* Complaint, doc. 1.

**3.** Mr. Dughaish has since left the employment of defendant and is apparently unavailable to testify. *See* doc. 42–20, Ex. 16, page 1. Co-

lumbia Sussex states that "Dughaish is unavailable as a witness, and EEOC cancelled his deposition because of their inability to locate him. Yet there is ample evidence of Dughaish's 'state of mind' and the reasons for which he terminated [Mr. Knight]." Doc. 46, page 3.

**4.** Since the events that make up the factual backdrop of this lawsuit occurred, Ms. Rice has gotten married. Her married name is Renee Rice–Lavergne.

*Disparate Treatment Discrimination* [5]

▉ The Fifth Circuit has explained the legal standard in Title VII discrimination cases as follows:

> The plaintiff must establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor. Once established, the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason. The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination. But, if the defendant has offered a legitimate nondiscriminatory reason for its action, the presumption of discrimination derived from the plaintiff's prima facie case "simply drops out of the picture," and "the ultimate question [is] discrimination vel non." [6]

Here, the EEOC seeks to establish its prima facie case of discrimination by establishing disparate treatment of two similarly situated employees. In order "to establish disparate treatment a plaintiff must show that the employer 'gave preferential treatment to [another] employee under "nearly identical" circumstances....' " [7]

Columbia Sussex argues that the EEOC cannot make out its prima facie case in this way because the circumstances surrounding Mr. Knight's termination were not nearly identical to the circumstances regarding Ms. Rice's employment. Columbia Sussex argues that Mr. Knight was fired for poor performance. As support for this argument, Columbia Sussex cites the deposition testimony of Ryan Parker, who was employed by Columbia Sussex as the Regional Food and Beverage Director at the time surrounding Mr. Knight's termination.[8] Mr. Parker states that he personally witnessed Mr. Knight's job performance and observed Mr. Knight to be "aloof, not in his work areas, not where he needed to be, not in control of his staff ...." [9] Mr. Parker stated that he reported his concerns to the General Manager, Mr. Dughaish, and "made the recommendation that Mr. Knight was unfit to lead the banquet department...." [10]

> My job was to go in and fix and resolve issues with food and beverage problems, with morale, employees, progress, not making their numbers, poor performance, poor guest standards and to train and increase those standards in the managers. I was only sent to properties that had major food and beverage issues or concerns that corporate had about non-performing managers. *Id.* at 42.

---

**5.** For purposes of its motion for summary judgment, Columbia Sussex concedes that Mr. Knight "was a member of a protected class and that he was subjected to an adverse employment action when he was terminated." Doc. 43–3, page 13.

**6.** *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1089–90 (5th Cir.1995) (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 and 518, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

**7.** *Okoye v. The University of Texas Houston Health Science Ctr.,* 245 F.3d 507, 514 (5th Cir.2001). *See also Mayberry v. Vought Aircraft Co.,* 55 F.3d at 1090 (5th Cir.1995) ("To establish a prima facie case in this manner, Mayberry must show that which employees were treated differently under circumstances 'nearly identical' to his.").

**8.** Doc. 42–9, Ex. 15, page 40. According to Mr. Parker:

**9.** *Id.* at 87.

**10.** *Id.* at 88. In response to Columbia Sussex's reliance on Mr. Parker's deposition, the EEOC submits paragraphs 14 through 17 of Mr. Knight's declaration in which Mr. Knight argues that Mr. Parker did not "meaningfully observe my performance while he was employed by Defendant," "have personal knowledge of the banquets that I ran or the manner in which I ran them," "document any perceived deficiency in my performance," and

Columbia Sussex also argues that Mr. Knight's own deposition testimony makes it clear that he was fired for poor performance prior to the October 30 stand up meeting. According to Mr. Knight, Mr. Dughaish asked Mr. Knight and Gaynell Richard, a supervisor under Mr. Knight in the banquet department, to come to his office on October 28, 2006. According to Mr. Knight:

It was like overrunning when I'm trying to tell him exactly what our plans are, you know, be professional, be direct, definitive [sic] exactly what we were going to do, what happened here, but this is how we're going to fix it. I wasn't allowed to do that. So I probably became frustrated and told him, you know, "Tony, if you just don't like the job I'm doing, why don't you fire me?" He said, "Give me your keys." At that point we were at—probably at the banquet door. Could have been half open. I don't remember that.

At that point shortly thereafter, he said, "Look, Richard, if you want to see, I'm going to show you how to do banquets."

I left my keys and phone on my desk, came back out. We had a meeting with the employees. I asked Gaynell, I said, "What did Tony do with my phone and keys?" She said, "They're on the desk," so I went back in my office and got my phone and my keys and worked the rest of the day.[11]

Based on this portion of Mr. Knight's deposition testimony, Columbia Sussex asserts Mr. Knight was a poor performer who had been informally fired prior to the stand up meeting on October 30, 2006.[12]

In contrast to Mr. Knight, Columbia Sussex asserts that Ms. Rice "was an exemplary employee"[13] and that "there is *no* evidence Dughaish had any similar issues with Renee Rice at any time."[14] However, Ms. Rice states in a declaration that Dughaish "threatened my job on many occasions. An example of the ways in which he would do so included his telling me that there were seventeen exits to the hotel."[15] Although Columbia Sussex has moved to strike Ms. Rice's declaration as vague, conclusory, and speculative, this Court agrees

"had no basis to have a personal understanding of the work that I performed." Doc. 45–4, pages 5–6. Columbia Sussex moves to strike these declarations on the ground that they are based on Mr. Knight's opinion rather than his personal knowledge. Rather than grant defendant's motion to strike, this Court holds that both parties may present their arguments to the jury regarding both Mr. Knight's job performance and Mr. Parker's ability to assess that performance. Such an assessment goes to the weight and credibility the trier-of-fact may lend to each witness's testimony. Thus, this Court denies the portion of Columbia Sussex's motion to strike dealing with paragraphs 14 through 17.

11. Doc. 42–12, Ex. 8, pages 106–107.

12. In Columbia Sussex's reply brief to its motion for summary judgment, defendant states "[i]t is undisputed that Knight and Dughaish discussed at least the possibility of Dughaish firing him." Doc. 52, page 4. In further support of its "informal termination" theory, Co-

lumbia Sussex asserts that at some point during the afternoon of October 28, 2006, Mr. Knight told Kenneth Fails, who was Human Resources Director at the time, that Mr. Dughaish had just fired him. However, examination of Mr. Fails deposition reveals that Mr. Fails was not sure who he spoke with over the weekend of October 28 and could not recall specifics other than he "knew there was—there was an incident that occurred between Tony and Richard that culminated in Tony taking Richard's keys and his radio." Doc. 42–16, Ex. 12, page 162. Thus, this Court does not consider Mr. Fails deposition testimony to be competent evidence of Mr. Knight's informal termination.

13. Doc. 46, page 5.

14. Doc. 52, page 4.

15. Doc. 45–5, page 2.

with the EEOC that Ms. Rice is "competent to attest to the inferences she drew from Dughaish's words and demeanor"[16] and that Columbia Sussex "will be free at trial to try to impeach Ms. Rice and to argue that she lied when she attested that Dughaish threatened her on many occasions."[17]

Thus, this Court finds that Ms. Rice's declaration creates a factual question as to whether Mr. Dughaish had any issues with Ms. Rice as an employee.[18] Further, the portions of Mr. Knight's deposition testimony on which Columbia Sussex relies for its assertion that Mr. Knight was fired prior to the October 30, 2006 stand up meeting do not definitively show the "informal termination." Indeed, it appears that Mr. Knight was allowed to work the remainder of the evening on October 28 as well as his shift the next day.[19] This Court finds that Ms. Rice's declaration, combined with ambiguous nature of the October 28, 2006 meeting, evidence a factual issue as to whether Ms. Rice and Mr. Knight were similarly situated on October 30, 2006.[20]

The EEOC also argues it has established a prima facie case of discrimination based on the fact that Mr. Knight was replaced by a female, Melissa Daigle.[21] However, Roger Goldesberry, who took over management of the hotel/casino in an interim capacity after Mr. Dughaish was terminated in December of 2006, stated that he "offered the Banquet Manager position to Melissa Daigle...."[22] Ms. Daigle confirms in her deposition that "Mr. Goldesberry offered me the [Banquet Manager] position and I accepted it."[23] Thus, Mr. Knight's replacement by Ms. Daigle does nothing to prove or disprove Mr. Dughaish's discriminatory animus.[24]

16. Doc. 54, page 5.

17. Doc. 54, page 4.

18. It appears that neither Ms. Rice nor Mr. Knight received written warnings regarding their performance.

19. In a declaration submitted by the EEOC in opposition to Columbia Sussex's motion for summary judgment, Mr. Knight states that he worked the event scheduled for the evening of October 28, 2006, a full shift on Sunday, October 29, 2006, and two hours prior to the stand up meeting on October 30, 2006. Doc. 45–4, page 8 ¶ 26.

20. Columbia Sussex also argues that because Mr. Dughaish hired and fired Mr. Knight within a five-month span, this "gives rise to an inference of non-discrimination because it is unlikely that a decision maker 'would hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.' " *Nieto v. L & H Packing Co.,* 108 F.3d 621, 624 (5th Cir.1997) (quoting *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir.1996)). While this presumption may in some cases apply, this Court notes that even when applicable, it does not preclude a finding of discrimination. *See Brown v. CSC Logic, Inc.* 82 F.3d at 658 (5th Cir.1996). Further, this Court agrees with plaintiff that discrimination "is, by definition, *irrational.* Therefore, a court would err if it were to assume true rationality in the decisionmaking process of alleged discriminators." Doc. 51, page 16. This Court is reluctant to base a finding of "no discrimination" on such a tenuous presumption.

21. Another method of establishing a prima facie case of discrimination is for plaintiff to show the terminated employee "(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class ..." *Okoye v. The University of Texas Houston Health Science Ctr.,* 245 F.3d 507, 512–513 (5th Cir. 2001).

22. Doc. 43–8, page 2.

23. Doc. 42–15, Ex. 11, page 59.

24. The EEOC also asserts that Columbia Sussex's standard practice was to use a progressive discipline system. The EEOC reasons that "[d]efendant's deviating from its own in-

*Retaliation*

■ To establish a prima facie claim of retaliation, a plaintiff must show that (1) she engaged in Title VII protected activity; (2) defendant carried out an adverse employment action; and (3) there was a causal connection between plaintiff's protected activity and defendant's adverse action.[25]

■ The EEOC argues that under Fifth Circuit precedent, when there is close temporal proximity between the protected activity and the adverse employment action, "a reasonable trier of fact is free to infer retaliatory motivation."[26] The EEOC asserts that

> Dughaish fired Mr. Knight literally within seconds or minutes of Mr. Knight's complaining of the fact that Dughaish was treating Ms. Rice better than he was treating Mr. Knight, because of her sex. This temporal gap between the protected activity and the discharge is as small as it could possibly be.[27]

While Columbia Sussex "vehemently denies that Knight engaged in any protected activity," it states that, Mr. Knight's "testimony that he complained about the way he was treated as compared to Rice must be accepted for purposes of this motion."[28] Columbia Sussex also admits that Mr.

Knight suffered "the ultimate employment action of termination."[29] However, Columbia Sussex argues that Mr. Knight cannot make out a prima facie case of retaliation because his deposition testimony clearly shows he complained about disparate treatment *after* his termination at the stand up meeting. Thus, defendant asserts that no causal connection between the protected activity and the adverse employment action exists, and that the EEOC's "temporal proximity" argument is disingenuous. Columbia Sussex cites the following testimony of Mr. Knight to support its assertion that Mr. Knight was terminated before he complained of being treated differently from Ms. Rice:

A: I remember speaking about negative stand-up meetings, being belittled in from of my staff

Q: Okay. And Tony's response to that?

A: "Come to my office."

Q: And your response was that not without an HR representative?

A: Correct.

Q: And how did he respond to that?

A: He said, "Richard, come to my office." I said, "Not without an HR director."

Q: And did the meeting continue?

---

ternal rules and procedures is a separate indicator of pretext and discrimination." Doc. 45, page 13. However, Columbia Sussex asserts that during Dughaish's employment as General Manager at least, the "non-mandatory, unofficial practice at Sheraton ... did not *require* any particular step discipline before termination." Doc. 52, page 16. Finding there to be insufficient evidence as to the existence or extent of a step disciplinary system in place *at the time of Dughaish and Knight's employment*, this Court declines to decide whether Columbia Sussex's failure to use such a system in the case of Mr. Knight can serve as a separate indicator of discrimination.

25. *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 439 (5th Cir.2005).

26. Doc. 45, page 9. *See Stroud v. BMC Software, Inc.*, 2008 WL 2325639, *5 (5th Cir. 2008) (compiling cases finding a causal connection based on temporal proximity).

27. Doc. 45, pages 8–9.

28. Doc. 43–3, page 17.

29. Doc. 43–3, page 18. This Court considers an ultimate employment action to also be an adverse employment action.

A: No. He repeated himself again. I said, "Not without an HR director" and he said, "Okay. You're fired."

Q: And what did you—did you have any further conversation?

A: I told him, I said, "You requested Renee to go to your office, and you did nothing, and you're requesting me to go to your office, and you're firing me." He said, "Yes." I asked him again the exact same thing. He said, "I'm the general manager. I can do anything I want." I repeated myself. I said, "You requested Renee to go to the office. She refused. You did nothing. You requested me to go to your office, you did nothing, and now I'm fired?" He said, "Yes. I told you I'm the GM. I can do anything I want." [30]

Columbia Sussex insists that Mr. Knight's above testimony makes it clear that Mr. Knight was terminated *before* he complained about alleged disparate treatment.

In opposition, the EEOC submits the declaration of Mr. Knight, which it asserts shows that Mr. Knight "specifically noted that Dughaish was giving better treatment to a female, *before* Dughaish fired him." [31] Columbia Sussex moves to strike the portion of Dughaish's declaration upon which the EEOC relies, arguing that the relevant assertions "contradict Knight's prior sworn testimony." [32] Columbia Sussex argues that the objective of Mr. Knight's declaration is to "blur the line regarding **when** Knight made his so-called complaints of preferential treatment" and that the relevant portions of the declarations are so inconsistent with Mr. Knight's deposition that they "should be disregarded as 'sham' testimony." [33] When this Court compares Mr. Knight's deposition testimony with his declaration statements, it does not find the two to be so inconsistent as to qualify as sham testimony. Instead, any such inconsistencies, to the extent Columbia Sussex can convince a jury they exist, go to the credibility and weight of Mr. Knight's testimony rather than its admissibility. As the Fifth Circuit has explained:

> In reviewing a motion for summary judgment the court must consider all the evidence before it, including affidavits that conflict with deposition testimony. A genuine issue of material may be raised by such an affidavit "even if it conflicts with earlier testimony in the party's deposition." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir.1980) (citing 6 *Moore's Federal Practice* ¶ 56–15[4] at 56–522 (2d Ed.)).... To the extent they exist, discrepancies in those averments present credibility issues properly put to the trier-of-fact. *Kennett–Murray*, 622

---

**30.** Doc. 42–12, Ex. 8, pages 117–118.

**31.** Doc. 51, page 7. In Mr. Knight's declaration, he states:

I refused on October 30, 2006, to go into Dughaish's office without an HR representative, just as Ms. Rice had moments before. When Dughaish pressed the issue after my refusal, I noted multiple times that he was not requiring Ms Rice, a female, to go into the office without an HR representative, but he was still requiring me to do so. After my repeated refusal to go into Dughaish's office without an HR representative, Dughaish told me I was fired. I then repeatedly asked Dughaish to confirm that he was firing me for refusing to go into his office, despite the fact that Ms. Rice also refused, but was not being fired. Again, I specifically referred in this context, repeatedly, to the fact that Ms. Rice was a female but was not being fired. Dughaish stated he was the GM [General Manager] and he could do whatever he wanted. Doc. 45–4, page 9, ¶ 32–33.

**32.** Doc. 49–2, page 19.

**33.** Doc. 49–2, page 20.

F.2d at 894. Credibility assessments are not fit grist for the summary judgment mill.[34]

Therefore, this Court denies Columbia Sussex's motion to strike paragraphs 32 and 33 of Mr. Knight's declaration. This Court finds that the EEOC has established a genuine issue of material fact regarding the timing and causal connection between Mr. Knight's alleged protected activity and his termination.[35]

## Conciliation

■ Prior to bringing a civil action, the EEOC is statutorily obligated to "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."[36] The Fifth Circuit stated in *EEOC v. Agro Distribution, LLC* that a good faith conciliation effort requires the EEOC to:

(1) outline to the employer the reasonable cause for its belief that Title VII has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable and flexible attitudes of the employer.[37]

In *Agro*, the EEOC failed to respond to employer's concerns about the methods by which the EEOC investigator conducted an on-site investigation, instead allowing the investigator to remain in charge of the investigation. The investigator then issued a summary of evidence to the employer, Argo, which contained a number of inaccurate facts. Based on this inaccurate report, the EEOC determined a violation of the ADA had occurred and sent a conciliation agreement to Argo demanding reinstatement, back-pay, medical expenses and $120,000.00 in compensatory damages. Argo left a message with the investigator requesting a meeting; however, the next day, EEOC sent a letter to employer stating conciliation had failed. Argo again requested a meeting and clarification regarding the EEOC's settlement requirements. The EEOC failed to respond. Argo then offered $3500.00 in settlement and almost ten months later, the EEOC rejected the employer's offer and thereafter filed suit.[38] Although the court opted to rule on the merits, it noted that under the particular facts, "dismissing the case and awarding attorneys' fees for the failure to conciliate would not have constituted an abuse of discretion."[39] However, in

---

**34.** *Dibidale of Louisiana, Inc. v. American Bank & Trust Co., New Orleans*, 916 F.2d 300, 307–308 (5th Cir.1990). The Court finds that a fair reading of Mr. Knight's deposition testimony and declaration indicate that the declaration could be categorized as supplementing rather than directly contradicting his prior deposition testimony. During the deposition, Mr. Knight was not asked to explain the timing of his interaction with Mr. Dughaish; instead, Columbia Sussex's argument is based on Mr. Knight's response regarding "any further conversation" during the incident. *See* Doc. 42–12, Ex. 8, page 118.

**35.** Because we do not base our ruling on the other portions of Mr. Knight's declaration, this Court does not reach the remainder of Columbia Sussex's motion to strike. This Court leaves for another day the admissibility

of the remaining portions Mr. Knight's declaration, including paragraphs 5–8 regarding Mr. Knight's prior employment with Argosy Casino, paragraphs 9–13 regarding Mr. Knight's hiring by Columbia Sussex, paragraphs 18–23 regarding the events of October 28, 2006, paragraph 27 regarding Mr. Knight and Mr. Dughaish's morning greeting prior to the stand-up meeting of October 30, 2006, and paragraphs 39–48.

**36.** 42 U.S.C § 2000e–5(b).

**37.** *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 468 (5th Cir.2009).

**38.** *Id.* at 466–467.

**39.** *Id.* at 469.

instances where the EEOC has acted in good faith but prematurely terminated negotiations, a court is "free to impose a stay . . ." [40]

■ Thus, "the fundamental question is the reasonableness and responsiveness of the EEOC's conduct." [41] Columbia Sussex argues that the EEOC ignored its request for an in-person meeting and refused to give it further information as to the EEOC's damage calculations. Columbia Sussex asserts that the EEOC ignored the differing circumstances between Rice and Knight and that had the EEOC fulfilled its "continuing duty to examine the merits of its case," it would have dismissed the suit as having no merit. [42] Finally, Columbia Sussex argues that the EEOC continues to improperly seek damages for emotional distress despite the fact that it has no medical evidence of such distress.

In opposition, the EEOC argues that it did fulfill its responsibilities to defendant. It asserts that the Louisiana Commission on Human Rights (LCHR) investigated the situation and determined that unlawful discrimination occurred. The EEOC states that LCHR then issued a proposed conciliation agreement which stated that Columbia Sussex's failure to contact the commission within ten days would indicate an unwillingness to participate in conciliation. [43] The EEOC asserts that defendant contacted LCHR more than ten days later asking it to reverse its determination; however, from the letters submitted by the EEOC it is unclear whether Columbia Sussex responded to the determination and conciliation agreement outside the ten-day window. [44] In any event, the EEOC denied Columbia Sussex's request for reconsideration on May 31, 2007. [45] The EEOC states that it also invited Columbia Sussex to participate in conciliation but Columbia Sussex did not timely contact it regarding conciliation. [46] Finally, the EEOC seems to assert that any conciliation efforts at this point would prove fruitless. As it asserts:

> LCHR and the EEOC have consistently proposed reinstatement as an appropriate and key remedy in this matter. Defendant has consistently refused, to the present date, to even consider reinstating Mr. Knight. As such, there is clear-

---

40. *Id.*

41. *EEOC v. Klingler Electric Corp.*, 636 F.2d 104, 107 (5th Cir.1981).

42. Doc. 43–3, page 20.

43. Doc. 43–18, page 7.

44. It is unclear whether the LCHR determination and proposed conciliation agreement was faxed to defendant on April 9, 2007 or April 19, 2007. Doc. 43–18, page 7. The EEOC submits an April 19, 2007 letter from Pam Chambers, Human Resources Specialist at Columbia Sussex, appealing to reverse the determination.

45. Doc. 43–16, Ex. M, page 1.

46. A letter to Ms. Chambers from the EEOC dated September 7, 2007 "invite[s] Respon-

dent to note its willingness to resolve these claims at this stage by either accepting the proposed terms of the settlement, or in the alternative, making its own formal proposal for the resolution of the charge." The letter requests a response within ten days. Doc. 43–17, page 1. A response dated September 24, 2007 from Columbia Sussex's attorney argues the merits of the EEOC determination that Mr. Knight and Ms. Rice were similarly situated employees at the time of Mr. Knight's termination. Doc. 42–31, Ex. 27, page 3. The letter also requests a factual basis for the EEOC's monetary demands and concludes that Columbia Sussex "would like to schedule a meeting to visit with you . . . concerning the facts of the case, as well as the remedies requested on behalf of [Mr. Knight]." Doc. 42–31, Ex. 27, page 4. Rather than scheduling this requested meeting, a "Notice of Conciliation Failure" was issued by the EEOC on September 25, 2007. Doc. 43–18, page 47.

ly an impasse, by virtue of Defendant's position, which would prevent conciliation of this matter.[47]

It appears to this Court that defendant's argument as to conciliation is at heart an argument that the EEOC should have realized the merits of this case are lacking, dismissed the case, and never sought damages. Considering that this Court cannot dismiss the EEOC's charges at this stage because of factual disputes, we cannot find that the merits of this suit are so insufficient. Further, it appears that the EEOC's efforts in this case do not sink to the level found in *Agro*. While it appears that the EEOC issued a "Notice of Conciliation Failure" one day after Columbia Sussex requested a meeting to discuss the factual basis of the EEOC's determination and its request for damages, it also appears that an impasse had arisen as to the threshold question of whether a violation had occurred. Given that Columbia Sussex and the EEOC do seem to have reached an impasse regarding the threshold issue of whether a Title VII violation occurred, this Court agrees with the EEOC that conciliation efforts at this point would be futile. This Court finds that the EEOC fulfilled its duty to conciliate with defendant.

### Conclusion

For the reasons discussed above, both motions for summary judgment are DENIED. (Docs. 42 & 43). Columbia Sussex's motions to strike the declarations of Ms. Rice and Mr. Knight are DENIED. (Docs. 49 & 50).